[L. A. No. 16461. In Bank.—March 31, 1938.]

A. MEYERS, Respondent, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION et al., Appellants.

Willedd Andrews, Louis Ferrari, Edmund Nelson and G. L. Berrey for Appellants.

Joe Crider, Jr., and John J. Ford for Respondent.

THE COURT.—From the record herein it appears that in the course of the conduct of the business in which plaintiff was engaged, on each of numerous occasions his office manager received certain checks which theretofore had been made payable to plaintiff; that thereupon plaintiff's said office manager forged upon them the name of the payee and negotiated them with defendant Wascher, who paid full value therefor; that plaintiff's said manager wrongfully converted the value of said checks to his own use; that upon such receipt of said checks, in the ordinary course of his business, defendant Wascher deposited them in his bank account with the defendant bank, which thereafter presented them to the respective drawees thereof, and received full payment therefor. It also appears that at and during all the times in question plaintiff was indemnified against damage

which might result from the wrongful acts of his office manager by a bond which theretofore had been executed by United States Guarantee Company, and that following the discovery of said manager's dishonesty in the premises, the bond company reimbursed plaintiff for the loss which thus had been sustained by him. At the same time plaintiff assigned to the bond company any cause of action of which he then was the owner as against the defendant bank, together with the right to maintain an action at law thereon in the name of plaintiff. Acting in behalf of the assignee, plaintiff brought this action. In pursuance of the commencement and prosecution of such action, a judgment was rendered in favor of plaintiff, and it is from such judgment that the instant appeal is presented to this court.

On the part of appellant bank, in effect, it is contended that whatever right plaintiff's assignee may have had to maintain an action against the defendants, ultimately, if at all, its success must have depended upon an application of the doctrine of subrogation. On the other hand, respondent insistently urges the point that since originally he was the owner of an assignable cause of action against the defendant bank, he also had the legal right to assign it to his indemnitor; furthermore, that because both the right of action and its assignment were legal in their nature, the action was one at law, with the necessary consequence that the equitable doctrine of subrogation was inapplicable.

In that regard, at the outset, it should be noted that assignment of an assignable cause of action is but one of the recognized forms of subrogation, and that when one is entitled to substitution in the place of one entitled to institute and to maintain an action, neither a written, nor an oral contract, is necessary to effect a transfer of such right; consequently, with reference thereto, repeatedly it has been ruled not only that a formal, written assignment of a claim of the nature of that here involved adds nothing to the enforceability by the assignee of the cause of action, but also, that it is subject to the same defenses as though no assignment thereof of any sort had been made. Notwithstanding that principle of law, with respect to the factual situation hereinbefore set forth, great reliance is placed by respondent in the ruling announced in the analogous case of *Grubnau* v. *Centennial Nat. Bank,* 279 Pa. 501 [124 Atl. 142], that

(syllabus) "Where an insurance company had paid a loss resulting to insured from the forgery of checks on its deposit at a bank, and had taken an assignment of its cause of action against the bank, there was no subrogation wherein the equities of the bank could be said to exceed those of the insurer."

Nor, in that regard, may it be said that the legal principle there declared is out of harmony with other precedents of like nature, as may be noted on consideration of the following authorities cited by respondent: *Metropolitan Casualty Ins. Co.* v. *First Nat. Bank in Detroit*, 261 Mich. 450 [246 N. W. 178], *Offer* v. *Superior Court*, 194 Cal. 114 [228 Pac. 11], *Estate of Elizalde*, 182 Cal. 427 [188 Pac. 560], *Title Guaranty etc. Co.* v. *Duarte*, 54 Cal. App. 260 [201 Pac. 790], *Martin* v. *Federal Surety Co.*, 58 Fed. (2d) 79, *First & Tri State Nat. Bank & Trust Co.* v. *Massachusetts Bonding & Ins. Co.*, 102 Ind. App. 361 [200 N. E. 449], and *National Surety Co.* v. *Bankers Trust Co.*, 210 Iowa, 323 [228 N. W. 635].

But in appellants' behalf, especially with reference to the foundation upon which in an action of this character, a right of a substituted plaintiff to maintain a suit for the recovery of damages originally suffered by another must rest, appellants have directed the attention of this court to a line of cases which in their legal effect is wholly at variance with those to which reference hereinbefore has been had.

However, before proceeding to a consideration of the pertinent authorities, a statement that occurs in 60 C. J., page 749, with reference thereto should be noted, to wit: "While the creditor may properly make an assignment of his rights and remedies to the surety where the surety is *entitled* to be subrogated, the completion of the surety's subrogation, and his right to pursue the rights and remedies of the creditor, is not dependent on the willingness of the latter to make an assignment, *for in equity the surety's payment causes an assignment by operation of law and no formal assignment or transfer is necessary.* On the other hand, it seems that, if the surety is *not entitled to subrogation,* an assignment by the creditor will be ineffectual to give the surety a right of subrogation he would not otherwise have." (Italics added.)

Illustrative of that rule, is the case of *American Surety Co. of N. Y.* v. *Lewis State Bank,* 58 Fed. (2d) 559, wherein

suit was brought against the bank by the surety on a state game commissioner's bond, to recover by right of subrogation for the payment of warrants fraudulently drawn by its principal to fictitious payees. After the surety had paid the state the amounts of the moneys thus converted, it took an assignment, or "subrogation agreement", to all actions which the state had against the defaulter or any third person answerable to the former or to the state. The contention was made that the suit was one in the right of its assignor, the state of Florida, which could not have maintained the suit in the federal court. In holding this contention to be without merit the court said: "The cause of action asserted here is one in equity for subrogation, *not at law upon the assignment. . . .* It (subrogation) is properly applied in favor of a surety on a fidelity bond *only against persons who have participated in the wrong of its principal. . . . It is never applied against an innocent person wronged by the principal's fraud.*" (Italics added.)

In the case of *American Bonding Co. of Baltimore* v. *State Sav. Bank,* 47 Mont. 332 [133 Pac. 367, 46 L. R. A. (N. S.) 557], the facts of which were analogous to those presented here, after a county had recovered against a surety for defalcations of its principal, the surety took an assignment of any right of action which the county might have had against the bank, and sought recovery against the latter. The court there said: "At law this surety company would not have any right of action against the bank; but, to state a cause of action at all, it must allege such facts as *will appeal to the conscience of a court of equity.*" (Italics added.)

Likewise, in the case of *Louisville Trust Co.* v. *Royal Indemnity Co.,* 230 Ky. 482 [20 S. W. (2d) 71], hereinafter referred to, the court there said: "We do not regard the assignment taken some time after the indemnity company had discharged its obligation as *adding* anything to the surety's right of action against the trust company. In the circumstances, its case *depends altogether on the doctrine of subrogation,* which is essentially a creature of equity." (Italics added.)

█ Under these cases the conclusion seems inevitable that one who asserts a right of subrogation, whether by virtue of an assignment or otherwise, must first show a *right in equity* to be entitled to such subrogation, or substitution, and

that where such right is clearly shown by the application of equitable principles, an assignment adds nothing to his right thereto. Otherwise stated, where by the application of equitable principles, a surety has been found not to be entitled to subrogation, an assignment will not confer upon him the right to be so substituted in an action at law upon the assignment. His rights must be measured by the application of equitable principles in the first instance, his recovery being dependable upon a right in equity, and not by virtue of an asserted legal right under an assignment. With these conclusions as a premise, we shall proceed to an examination of the line of cases relied upon by appellant bank as authority for its contention that in equity respondent has no right of subrogation under the facts of this case.

In the case of *New York Title & Mortgage Co.* v. *First Nat. Bank,* 51 Fed. (2d) 485 [77 A. L. R. 1052], a loan broker, through forgeries and misrepresentations procured title insurance policies, by which a loan association was guaranteed against loss by reason of defects in the mortgagor's title to realty described in mortgages or deeds of trust by which certain loans were secured. In each case, the purported borrower was a fictitious person. In that connection, upon his receipt of a check from the loan association, the broker forged the name of the payee thereof, deposited it in the drawee bank and converted the proceeds to his own use. The bank, after paying such check, charged the amount thereof to the account of the loan company. The title insurer paid the loss to the loan company and brought suit against the bank for the total amount so paid. In that case the court pointed out that there were two independent contracts involved, the one being that the bank would not pay the checks of its depositor upon forged indorsements, and the other, that existing between the loan company and the plaintiff indemnitor. The court said: ''Plaintiff's payment to the loan company was a discharge of its primary contract liability. . . . Plaintiff paid the loan company only what it contracted primarily to do, but now, retaining the premiums or benefit of its contract, it seeks reimbursement from the bank, on the theory that the bank, under a wholly separate and independent contract, was liable to the loan company for having paid checks on forged indorsements. . . . If we assume that neither the plaintiff nor the bank was the wrongdoer, but, by independent contract obligation, each was liable to the loan company, then

the satisfaction of such primary liability by the plaintiff would not give rise to a right to recover against the bank under the doctrine of subrogation, the bank not being a wrongdoer (citing cases). But if there were any doubt as to the soundness of this position, we think it clear that plaintiff is not entitled to invoke the remedy of subrogation, because that right is an equitable one, and is applicable in cases in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter. It is the method which equity employs to require the payment of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. It cannot, as a matter of right, be invoked in all cases without regard to circumstances, but only in cases in which *justice demands its application,* and the rights of one asking subrogation must have a greater equity than those who oppose him. As said by this court in *American Surety Co.* v. *Citizens' Nat. Bank,* 294 Fed. 609, 'The right of subrogation is an equitable right, and where equities are equal the right does not exist and there can be no relief.' '' After commenting upon the fact that the bank had been guilty of no negligence in the transactions involved, the court stated that, ''the primary cause of plaintiff's loss was the *forgeries committed by Smith''* (the loan broker), and that ''Here, . . . the bank paid the checks on which the indorsements were forged, without negligence, and the circumstances surrounding the transactions involved do not give rise to any superior equities in favor of the plaintiff; nor can it be said that in good conscience the defendant bank ought to stand the loss. . . . In our view, the equities in favor of the defendant bank constitute an *insuperable barrier* to plaintiff's right of recovery.'' (Italics added.)

In the case of *Louisville Trust Co.* v. *Royal Indemnity Co., supra,* an employer recovered on a fidelity bond because of an employee's misappropriation of checks of the former by depositing them to his own credit in a trust company. The employer assigned its claim against the trust company to its surety. There the court said: *''We do not regard the assignment taken some time after the indemnity company had discharged its obligation as adding anything to the surety's right of action against the trust company.* (*Godfrey* v. *Alcorn,* 215 Ky. 465 [284 S. W. 1094, 51 A. L. R.

925].) *In the circumstances, its case depends altogether on the doctrine of subrogation,* which is essentially a creature of equity, and is called into play only when it is necessary to bring about an *equitable adjustment* between the parties. . . . The case is one between a paid surety and the trust company, whose negligence it is claimed caused the loss. It must be conceded that the rule that makes the trust company liable to the (employer) . . . is to say the least, a hard one. . . . Therefore, as between the employer and the bank, there is much to be said in favor of the position that the loss should fall on the employer who selects an unfaithful agent, and thus vouches for his integrity, rather than on the bank whose officers in many instances are called upon daily to examine and keep account of a large number of checks, a duty which, to say the least, operates as a severe strain on ordinary care. Though the rule as between the bank and the employer is settled, yet, in view of its extreme harshness, we are not inclined to go further and hold that *the equities of a surety that has been paid to bear the loss are superior to those of the bank that receives no benefit from the transaction."* (Italics added.)

In *Northern Trust Co.* v. *Consolidated Elevator Co.,* 142 Minn. 132 [171 N. W. 265, 4 A. L. R. 510], the Supreme Court of Minnesota had before it a case factually similar to the facts in the instant matter, and which involved the question of subrogation, wherein it stated: "When it is sought to enforce the right (of subrogation) *something more must be shown than that defendant could have been compelled by the original creditor to pay the debt.* While a surety may assert the right against one with whom he had no contractual relations, *it must appear that the defendant participated, with notice,* in the illegal act of the principal which served to bring about the loss. The right to recover *from a third person* does not stand on the same footing as the right to recover from the principal. As to the latter, the right is absolute— as to the former, it is conditional." (Italics added.)

In the case of *American Bonding Co.* v. *State Sav. Bank,* 47 Mont. 332 [133 Pac. 367, 46 L. R. A. (N. S.) 557], a court clerk manufactured jury certificates and sold to the bank. The county took up the certificates and paid the bank without having discovered the fraud. The surety company on the clerk's bond made the loss good and then sued the bank. It

was held that although the county could have recovered from the bank, as between the surety company and the bank the equities were at least equal and that the bank was not liable to the surety. There the court said: "The doctrine of subrogation had its origin in the civil law. It has been adopted and invoked by courts of equity in order that justice may be done as nearly as possible. The application of the doctrine must therefore depend upon the circumstances of each particular case. . . . There is not any charge of negligence or wrongdoing on the part of the bank in purchasing the certificates. . . . Some one must suffer now for Farrell's official misconduct. Shall it be the bank, which acted in good faith and parted with its money for the spurious certificates issued by Farrell, or shall it be the surety company which for a compensation undertook to be responsible for Farrell's official delinquencies, not only to the state and to Silver Bow county, but to this bank as well? To such an inquiry a court of conscience can make but one answer. Upon the showing made in its complaint, the surety company has failed to show itself entitled to be subrogated to the right which the county may have had." It was there stated that the weight of authority supported the view taken by the court.

In case of *Washington Mechanics' Sav. Bank* v. *District Title Ins. Co.*, 65 Fed. (2d) 827 [62 App. D. C. 194], wherein the facts were analogous to those here presented, except that there the check was stolen by the employee of the drawer before delivery and deposited by the employee to his own account with the defendant bank, who in turn paid out money for the deposit thereof, it was held that the bonding company could not be subrogated. The court in that case said: "We are unable to see any particular in which. the equities of the bonding company are superior to those of the appellant bank. Neither one was guilty of culpable negligence in the transaction. The bonding company, being in the business of guaranteeing for a consideration the faithful conduct of employees, enabled the defaulting employee to hold the position of trust which he occupied. The appellant bank was acting consistently with the ordinary course of banking business in accepting a check, whose genuineness it had no reason to doubt. It cannot be said that either one of these parties, as compared with the other, was primarily liable for the default. It follows that the equities of neither are superior to the equities of the other in the transaction."

Also in *Estate of Whitney,* 124 Cal. App. 109 [11 Pac. (2d) 1107], one of two cotrustees of a testamentary trust, both of whom were bonded, wrongfully appropriated to himself funds of the trust estate without the knowledge of his co-trustee. Both trustees had an interest individually in the trust estate. The bonding company paid the loss, charged one-half to each bond, and asked to be subrogated to the claim of the estate against the innocent trustee and to have the interests of both trustees in the estate subjected to satisfaction of its claim. The court held that, although the innocent trustee was liable to the estate, the bonding company was not subrogated, and that its payment should have been charged wholly to the bond of the guilty trustee. In that case it was said: ''While section 2848 of the Civil Code provides that a surety, upon satisfying the obligation of his principal, is entitled to be subrogated to that extent to all remedies which the creditor has against the principal, the question whether the obligation which is satisfied is in fact the obligation of the particular principal is to be decided in accordance with the rules of law and principles of equity. As was said in *Southern Surety Co.* v. *Tessum,* 178 Minn. 495 [228 N. W. 326, 66 A. L. R. 1136] : 'Subrogation is equity's second method of compelling the ultimate payment by one who in justice and good conscience *ought* to make it— of putting the charge where it justly belongs. (*Emmert* v. *Thompson,* 49 Minn. 386 [52 N. W. 31, 32 Am. St. Rep. 566].) It is not an absolute right, but depends upon the superiority of the equities of him who asserts it over those of the one against whom it is sought. It will never be enforced when the equities are equal or the rights not clear.' . . . ''

To like effect is the case of *American Surety Co. of N. Y.* v. *Waggoner Nat. Bank,* 13 Fed. Supp. 295, wherein a tax collector deposited tax receipts in the defendant bank to his own credit, from which he made withdrawals. Thereafter a shortage was discovered in his accounts, and suit was brought by his surety, who had paid the loss, against the defendant bank. It was held that the surety could not recover. The court in that case likewise recognized the weight of authority to be with the view that in the circumstances, there could be no subrogation of a surety.

And in the case of *First & Tri State Nat. Bank* v. *Massachusetts Bonding & Ins. Co., supra,* cited by respondent, the statement is made: ''The doctrine of (subrogation) has

been applied most frequently in the courts to certain types of insurance cases. It has with almost unanimity been held not to apply *in favor of a surety on a fidelity bond,* except only against persons who participated in the wrongful act of the wrongdoer." (See, also, *National Surety Co.* v. *Arosin,* 198 Fed. 605 [117 C. C. A. 313], *Baker* v. *American Surety Co.,* 181 Iowa, 634 [159 N. W. 1044], *United States Fidelity & Guar. Co.* v. *Home Bank,* 77 W. Va. 665 [88 S. E. 109], *Emmert* v. *Thompson,* 49 Minn. 386 [52 N. W. 31, 32 Am. St. Rep. 566], *American Surety Co. of N. Y.* v. *Citizens Nat. Bank of Roswell,* (N. M.) 294 Fed. 609, *Stewart* v. *Commonwealth,* 104 Ky. 489 [47 S. W. 332], *Southern Surety Co.* v. *Tessum,* 178 Minn. 495 [228 N. W. 326, 66 A. L. R. 1136], and *American Bonding Co.* v. *First Nat. Bank,* 27 Ky. Law Rep. 393 [85 S. W. 190].) (Italics added.)

 Thus, it may be observed that there are two lines of cases governing the questions here presented, each wholly at variance with the other. We think the great weight of authority rests with the group last referred to, and that the principles there announced, in good conscience ought to be applied to the circumstances of this case. As stated hereinbefore, the right to maintain an action of this kind and to a recovery thereunder involves a consideration of, and must necessarily depend upon the respective equities of the parties. Here, the indemnitor has discharged its primary contract liability. It has paid what it contracted to pay, and has retained to its own use the premiums and benefits of such contract. It now seeks to recover from the bank the amount thus paid. It must be conceded that the bank is an innocent third party, whose duty to the employer was based upon an entirely different theory of contract, with which the indemnitor was not in privity. Neither the indemnitor nor the bank was the wrongdoer, but by independent contract obligation each was liable to the employer. In equity, it cannot be said that the satisfaction by the bonding company of its primary liability should entitle it to recover against the bank upon a totally different liability. The bank, not being a wrongdoer, but in the ordinary course of banking business, paid money upon these checks, the genuineness of which it had no reason to doubt, and from which it received no benefits. The primary cause of the loss was the

forgeries committed by the employee, whose integrity was at least impliedly vouched for by his employer to the bank. We cannot say that as between the bank and the paid indemnitor, the bank should stand the loss. Under the facts of this case, as is stated in *Northern Trust Co.* v. *Consolidated Elevator Co.*, 142 Minn. 132 [171 N. W. 265, 4 A. L. R. 510]: "The right to recover from a *third person* does not stand on the same footing as the right to recover from the *principal.*" (Italics added.)

Our conclusion, as hereinbefore has appeared, is that since the bonding company had no superior equities, it was not entitled to be subrogated to any claim plaintiff might have had against the bank.

The judgment is reversed.

Rehearing denied.