[Civ. No. 66416. Second Dist., Div. Seven. Feb. 3, 1984.]

FIREMAN'S FUND INSURANCE COMPANY,
Plaintiff and Appellant, v.
MORSE SIGNAL DEVICES et al., Defendants and Respondents.

Counsel

Harris & MacAuley and Richard G. Harris for Plaintiff and Appellant.

Bonelli, Heib, Fuchs & O'Neal, Malcolm G. Heib, Stanley Sapiro, Gold, Herscher, Marks & Pepper, Stephen D. Marks, Joshua L. Rosen, Spray, Gould & Bowers, Daniel O. Howard, Thomas H. Ott and Knapp, Petersen & Clarke for Defendants and Respondents.

Lawler, Felix & Hall, Robert P. Mallory and Wayne S. Grajewski as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

**THOMPSON, J.**—Fireman's Fund Insurance Company (Fireman's) appeals from a judgment of dismissal following an order sustaining, without leave to amend, the demurrers of defendants Morse Signal Devices, American Protection Industries, U.S. Burglar Alarm Company, Inc., Wackenhut Protective Systems, Alarmco, Inc., and the Western Burglar and Fire Alarm Association (hereinafter collectively referred to as Alarm Companies). The principal issues on appeal involve the subrogation claims of Fireman's, and the enforceability of the liquidated damages provisions in the Alarm Companies' service contracts. For reasons to follow, we have concluded that the trial court properly sustained the demurrers without leave to amend.

### Procedural and Factual Summary

Fireman's brought an action against the Alarm Companies claiming subrogation to losses arising from eleven property damage incidents sustained by Fireman's insureds.

Fireman's complaint alleges 30 causes of action based on breach of contract, negligence, gross negligence, or negligent misrepresentation. A 31st cause of action seeks declaratory relief to invalidate liquidated damage clauses contained in contracts between the Alarm Companies and Fireman's insureds. Finally, the 32d cause of action alleges violations under the Cartwright Act for conspiracy to fix prices by inclusion of liquidated damage provisions in the Alarm Companies' service contracts.

Prior to filing the third amended complaint before us, the court below ruled that recovery of money damages by Fireman's was legally limited to amounts provided in liquidated damage provisions. Since the liquidated damage amounts were below the jurisdictional requirements of the superior court, the superior court transferred the action to the municipal court. Fireman's filed a petition for writ of mandamus. Division One of this court issued a writ directing the superior court to accept jurisdiction, noting that "Respondent court erred in finding, on demurrer, that the damages recoverable by petitioner are limited by the liquidated damage clauses in the contracts." The Alarm Companies then demurred to the third amended complaint for failure to state a cause of action. The court below again transferred the action to the municipal court. Fireman's again petitioned to

Division One of this court to compel the superior court to assume jurisdiction. Division One issued a writ of mandamus again ordering the superior court to assume jurisdiction. Division One, however, did not review the nonjurisdictional basis for the demurrer, stating that "petitioner has not established that this matter is within the narrow exception for writ review of pleading matters set forth in *Taylor* v. *Superior Court* [1979] 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], and *Coulter* v. *Superior Court* [1978] 21 Cal.3d 144 . . . ."

The court below then modified its order and sustained the Alarm Companies' demurrers "on all grounds except jurisdictional; . . ." Subsequently, the court below entered a judgment of dismissal. It is from that judgment of dismissal that Fireman's now appeals.

Fireman's insureds (insureds) operate various commercial establishments. Each of the insureds had contracted with one of the Alarm Companies to have burglar or fire alarm systems maintained. The Alarm Companies' contracts with each of the insureds provide "liquidated damages" for any breach. An example of the language contained in the contracts is as follows:

"Morse *does not* represent or warrant that the alarm system may not be compromised or circumvented, that the system will prevent any loss by burglary, hold-up, fire or otherwise; or that the system will in all cases provide the protection for which it is installed or intended. Subscriber acknowledges that Morse is not an insurer, that Subscriber assumes all risk for loss or damage to Subscriber's premises or to its contents; that Morse has made no representation or warranties, nor has Subscriber relied on any representations or warranties, express or implied, except as set forth herein and Subscriber acknowledges that he has read and understands particularly *paragraphs 18 and 19* of this agreement which sets forth Morse's obligation and maximum liability in the event of any loss or damage . . . .

". . . . . . . . . . . . . . . . . . . . . .

"(18) Morse's Obligation Morse's obligation hereunder relates solely to the servicing of the specified protective signaling system and Morse is in no way obligated to maintain, repair, service, or to assure the operation of the property . . . .

"(19) Morse Not an Insurer and Liquidated Damages It is understood and agreed by and between the parties hereto that Morse is not an insurer. Insurance, if any, will be obtained by the Subscriber. Charges are based solely upon the value of the services provided for, and are unrelated to the value of the Subscriber's property . . . The Subscriber does not desire

this contract to provide for the liability of Morse and Subscriber agrees that Morse shall not be liable for loss or damage due directly or indirectly to any occurrence or consequences therefrom, which the system is designed to detect or avert. From the nature of the service performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure on the part of Morse to perform any of the obligations hereunder, or the failure of the system to properly operate with the resulting loss to the Subscriber. If Morse should be found liable for loss or damage due to a failure on the part of Morse or its system, in any respect, its liability shall be limited to the refund to Subscriber of an amount equal to the aggregate of six (6) monthly payments or the sum of Two Hundred Fifty ($250.00) Dollars, whichever sum shall be less, as liquidated damages and not as a penalty. . . ." (Italics in original.)

In each of 11 separate incidents a fire or burglary occurred at the insured's premises. The alarm system failed to function properly, either because of mechanical failure or because of the failure of the Alarm Companies' personnel to notify police or fire departments upon receiving signals from otherwise properly functioning systems. Fireman's alleges that where the Alarm Companies received alarm signals but failed to notify the proper officials, such "knowing" failure amounted to gross negligence. Fireman's further alleges that as a proximate result of the Alarm Companies' breach of its contractual duty or its negligent or grossly negligent acts, the fires or burglaries were not aborted. Fireman's seeks invalidation of the liquidated damage provisions.

### Equitable Subrogation

■ "'"Subrogation is equity's second method of compelling the ultimate payment by one who in justice and good conscience *ought* to make it—of putting the charge where it justly belongs. [Citation.] It is not an absolute right, but depends upon the superiority of the equities of him who asserts it over those of the one against whom it is sought. It will never be enforced when the equities are equal or the rights not clear." . . .'" (*Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 101 [77 P.2d 1084].)

In *Meyers,* the nominal plaintiff, Meyers, hired a manager who forged checks that were made payable to Meyers. The checks were negotiated through the defendant-bank. Meyers had taken out an insurance bond to indemnify himself from any losses that might occur from the manager's wrongful acts. The insurance company reimbursed Meyers and brought an action against the bank. The bank was contractually obligated for presenting checks with false endorsements. Had the bank properly required identification of the endorsements, it might have prevented the loss. The court,

however, refused to equitably subrogate the insurance company to Meyer's cause of action, even though the bank breached its contract.

The *Meyers* court concluded: "Here, the indemnitor has discharged its primary contract liability. It has paid what it contracted to pay, and has retained to its own use the premiums and benefits of such contract. It now seeks to recover from the bank the amount thus paid. It must be conceded that the bank is an innocent third party, whose duty to the employer was based upon an entirely different theory of contract, with which the indemnitor was not in privity. Neither the indemnitor nor the bank was the wrongdoer, but by independent contract obligation each was liable to the employer. In equity, it cannot be said that the satisfaction by the bonding company of its primary liability should entitle it to recover against the bank upon a totally different liability." (*Id.*, at p. 102.) As the court noted in *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 514 [64 Cal.Rptr. 187], in drawing upon *Meyers*: "The bank was a 'wrongdoer' in the sense that it breached its contract with its depositor, but the bank's breach did not cause the loss. The forger was the miscreant."

In the case at bench, Fireman's has alleged that the Alarm Companies' negligence proximately caused the loss Fireman's insured against. Although Fireman's attempts to characterize the Alarm Companies' breach as an action in tort, in *Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 187-188 [253 P.2d 10, 42 A.L.R.2d 580], a case against an alarm company sued for similar failures, the court concluded: "However, the plaintiff makes no claim that a duty was owed to it outside of that created by the contract, and no breach of duty was alleged other than a failure to render the contracted for service. Although an action in tort may sometimes be brought for the negligent breach of a contractual duty [citation], still the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created that duty."

Fireman's does not allege that the Alarm Companies created the fires or perpetrated the burglaries. While the Alarm Companies may have been negligent in performance of their contractual duties, their negligence did not create the harm.

". . . . Only if the person dealing with the wrongdoer is in a better position to avoid the loss than is the insured or the surety does the surety have the superior equity permitting it to recover as a subrogee. [Citation.] In the case of the check forged by a bonded employee, the primary cause of the loss is the conduct of the dishonest employee. The action of the bank in paying the check is secondary. Absent some negligent conduct of a character which promotes or encourages the employee's fraud, the bank is not

in a better position to avoid the loss than is the insured's employer." (*Continental Ins. Co.* v. *Morgan, Olmstead, Kennedy & Gardner, Inc.* (1978) 83 Cal.App.3d 593, 603-604 [148 Cal.Rptr. 57].)

In the case at bench, the primary cause of the loss is the creator of the fire or the burglar. The Alarm Companies' alleged negligence would be secondary to creation of the perils. Moreover, the insureds are in the best position to place a value on the contents of their premises. The insurance company, which charges its premiums based on the extent of insurance coverage, is in the best position to spread the risks assumed.

In finding that in such alarm service contracts it was impracticable as a matter of law to fix actual damages, the court noted in *Better Food Mkts.* v. *Amer. Dist. Teleg. Co. supra,* 40 Cal.2d at page 186: "The possibilities of the consequences of a failure of the defendant to perform its obligation under the contract are innumerable. . . . Where there had been a failure of performance and a loss, what part of that loss could be attributed to the failure of performance; or how much of that loss would have resulted had there not been a failure of performance?"

This is not a case where the reasonable expectations of the parties to the alarm service contracts have been frustrated. The insureds procured insurance for the very losses that were suffered.

Thus, we do not find that Fireman's is equitably subrogated to any of the insureds' causes of action based on breach of contract or negligence. This is a sufficient basis to affirm the judgment of dismissal, apart from the enforceability of the liquidated damage provisions.

### Liquidated Damages

In *Better Food Markets, supra,* 40 Cal.2d 179 the court upheld the validity of a liquidated damage provision limiting the alarm company's liability to $50. Prior to its amendment in 1978, Civil Code section 1671 provided that parties to a contract could provide for liquidated damages only "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." Further, a second requirement to validate a liquidated damage provision, was that the "amount must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." (*Better Food Mkts., supra,* 40 Cal.2d at p. 187; *Dyer Bros. I. Wks.* v. *Central I. Wks.* (1920) 182 Cal. 588 [189 P. 445].)

The court in *Better Food Mkts.* reasonably concluded that in such an alarm service contract case, "the impracticability or extreme difficulty in fixing

actual damages appeared as a matter of law." (40 Cal.2d at p. 187.) As the court concluded: "Where there had been a failure of performance and a loss, what part of that loss could be attributed to the failure of performance; or how much of that loss would have resulted had there not been a failure of performance? Under the complexity of the circumstances in this case the parties could not answer this question. There being no reasonable basis upon which to predict the nature and extent of any loss, or how much of that loss the defendant's failure of performance might account for, it is certain that it would have been 'impracticable or extremely difficult to fix the actual damage.'" (*Id.*, at p. 186.)

However, the court in *Better Food Mkts.* strained in finding the second element—that the amount provided represented a reasonable endeavor to estimate a fair average compensation for any loss that might be sustained. The court suggested: "There might be the theft of a ham, or of a truckload of goods, or the contents of a safe." (*Id.*, at p. 186.) As the dissent commented: "[T]his court goes to great lengths to uphold the validity of a provision such as this. Note the 'possibilities' which it considers might have happened from a failure of the burglar detection system. It is said that 'Entrances to the building after working hours might be made by persons having authority as well as by burglars or by persons bent on mischief. They might or might not cause damage. There might be the theft of a ham, or of a truckload of goods, or the contents of a safe. There might be a breaking in for the purpose of theft and no theft. If money was taken it might be a few dollars or many thousands. Books might be tampered with . . . .'" (*Id.*, at pp. 190-191.) The majority concluded that because of the various possibilities, $50 represented a reasonable endeavor to estimate a fair average compensation for losses that might be sustained.

The court, in a case decided the same day as *Better Food Mkts.*, held that $25 was also reasonable liquidated damages where a fire alarm system failed in a planing mill. (*Atkinson* v. *Pacific Fire Extinguisher Co.* (1953) 40 Cal.2d 192 [253 P.2d 18].) The court in reducing the award for fire damage from $97,437 to $25 maintained: "[T]he detection system was intended to provide protection in case of a wide variety of fires. Some of them would be slow burning, as in a bed of sawdust, where a loss resulting from the failure of the detection system might be negligible. Other fires might result only in a pitted floor. Still others would immediately envelop the buildings in flames and result in a very substantial loss." (*Id.*, at p. 195.)

As the dissent in *Atkinson* argued: "Upon what possible, rational basis can it be said that the sum of $25 bears *any* reasonable relation to *any* loss which the parties considered might be sustained? Considering the price of lumber in 1939 (the time the contract was entered into), it might almost be

said as a matter of judicial notice that $25 would not be reasonable compensation for a bale of shingles! But the majority, to sustain its unsound position, must strain at gnats to find a reason why the sum of $25 might bear some relation to any possible loss!" (*Id.*, at p. 201.)

The conclusions in *Better Food Mkts.* and *Atkinson* that reasonable endeavors were made to estimate fair average compensation for losses are conclusions that under the formulation of the law require a trial. What a reasonable endeavor is, is an issue of fact. The court in *Better Food Mkts.* and *Atkinson* reached its conclusions through a meaningless exercise of imagining trivial thefts of hams, and fires contained to burning sawdust which would cause damage under the $50 and $25 limits. This is a very unfortunate manner of reaching a limitation of damages. Because the *Atkinson* court validated the liquidated damages provision under section 1671, it found it "unnecessary to consider arguments by the defendant wherein it attempts to uphold the validity of [the clause] as a provision for limited liability." (*Id.*, at p. 198.) Although limitations of liability are disfavored, the court might have determined whether in commercial cases such a clause was a valid limitation of liability which does not affect the public interest. (See *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].)

New Civil Code section 1671, subdivision (b) (eff. July 1, 1978) now provides: "Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." New Civil Code section 1671 creates a presumption of validity of liquidated damage provisions in most contracts between commercial parties. It should also be emphasized that the new Civil Code section 1671 maintains a stricter standard for enforceability of liquidated damage provisions in non-commercial consumer settings. However, since dismissal of the case is based on the disallowance of subrogation to the insureds' causes of action, we need not determine the standards under new Civil Code section 1671.[1]

### Gross Negligence

■ While the liquidated damage provisions would not limit the Alarm Companies' liability in the event of gross negligence, the allegations of

---

[1]One of the eleven alarm service contracts before us should have been governed under the new Civil Code section 1671. The subject contract was executed October 15, 1973. The primary term was for five years with automatic five-year renewal periods. Thus the contract was automatically renewed October 15, 1978, at which time it should have been governed under new section 1671.

Fireman's are insufficient to state a cause of action for gross negligence. Fireman's alleges that in those cases where the Alarm Companies received signals but failed to alert fire or police officials, the Alarm Companies demonstrated reckless and wanton disregard of the possible consequences. In the *Better Food Mkts.* case, the assistant manager of the plaintiff market properly set the burglar alarm and locked the store's doors. When an armed robber forced him to reopen the store, alarm signals were set off and received by the defendant alarm company. The alarm company failed to inform police of their receipt of the signals for nine minutes. The market's complaint, even though characterized only in terms of ordinary negligence, was rejected. The *Better Food Mkts.* court noted: "The plaintiff seeks to avoid the effect of the liquidation clause on the ground that it has no application to a tort action. However, the plaintiff makes no claim that a duty was owed to it outside of that created by the contract, and no breach of duty was alleged other than a failure to render the contracted for service." (40 Cal.2d at pp. 187-188.)

### Antitrust Claim

Fireman's alleges that the anticompetitive inclusion of liquidated damage provisions in alarm industry contracts amounts to a conspired price-fixing scheme. Fireman's further contends that because it has paid the fire and theft losses of its insureds, Fireman's is subrogated to the cause of action for the alleged restraint of trade.

Assuming that Fireman's is able to show that the limitation of liability provision is a pricing element under the alarm service contracts, Fireman's is not subrogated to that claim.

The elements of an insurer's cause of action based upon equitable subrogation include: ". . . (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; . . ." (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 509.)

What is the loss under any purported price-fixing scheme to the insured? The loss, if any, to the insured consists either of higher priced alarm service or compelled costs such as the additional insurance premiums the insured may be burdened with to gain similar pricing terms.

Fireman's has not compensated its insureds for the same losses contemplated under the antitrust claim. None of Fireman's compensation paid to its insured is related to pricing terms of the alarm systems.

The judgment of dismissal of the court below is affirmed.

Schauer, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied February 24, 1984, and appellant's petition for a hearing by the Supreme Court was denied March 29, 1984. Grodin, J., was of the opinion that the petition should be granted.