### In re STEVE'S FURNITURE WAREHOUSE, INC., Bankrupt.

### No. 79–01556–P.

United States Bankruptcy Court, S.D. California.

Jan. 25, 1985.

Richard M. Peterson of Borgerding, Peterson, McGrath, Burnell & Waters, El Cajon, Cal., for trustee, Ralph Boldt.

Paul R. Smith of Solomon, Ward, Seidenwurn & Smith, San Diego, Cal., for creditor, TGF Co.

## MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTION TO CLAIM

ROSS M. PYLE, Bankruptcy Judge.

### I

### FACTS

On June 1, 1978, the debtor, Steve's Furniture Warehouse ("Steve's"), entered into a shopping center lease with TGF Company. Steve's leased retail space for a term of ten years at a monthly rental of $6,500.00. The lease agreement acknowledges Steve's prepayment of $13,000.00 representing rent for the last two calendar months of the lease term. Performance of the lease was assured by a separate guarantee agreement with Steve's principals, including Clarke F. Herring, in which they promised to perform any obligations owed to TGF by Steve's.

A few months after entering the lease, Steve's breached the lease and later filed a bankruptcy petition on January 14, 1979.[1] TGF filed a claim against the estate for $791,400.00 representing the balance of rent owed under the lease. After the trustee, Ralph Boldt, objected to the amount of the claim, TGF agreed to amend its claim to comply with the one-year limitation on rent recoverable after surrender of the premises or reentry of the landlord under Section 63(a)(9) of the Bankruptcy Act of 1898.

Section 63(a)(9) provides as follows:
"Debts of the bankrupt may be proved and allowed against his estate which are founded upon ... (9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued, without acceleration, up to such date. ..." (Emphasis added.)

TGF's amended claim of $111,059.49 represents a general unsecured claim for back rent of $24,831.34 and for one year of reserved rent of $86,228.15. TGF further reduced its claim to $98,059.49 after crediting Steve's $13,000.00 for prepayment of the last two months' rent in response to an objection by the trustee. An additional objection by the trustee, which is described below, is the subject of this Memorandum Decision.

### II

### ISSUE

As the result of a state court action by TGF against Herring, one of Steve's principals on the guarantee agreement, Herring paid TGF $73,000.00. The trustee asserts

---

1. Since this filing precedes October 1, 1979, the effective date of Pub.L. 95–958, all references herein are to the Bankruptcy Act of 1898.

that Herring's $73,000.00 payment should be credited to TGF's $98,059.49 claim. The trustee argues that Leahy and Herring were co-lessees sharing joint and several liability with Steve's. The only apparent basis for his argument is language in the first paragraph of the lease agreement which states that the lease is entered into between "T.G.F. Company, hereafter referred to as 'Landlord,' and Edward S. Leahy & Clarke F. Herring (Steve's Furniture Warehouse, Inc.), jointly and severally, hereafter referred to as 'Tenant.'" The trustee believes that his view is consistent with the purpose and intent supporting the limitation on a debtor's liability for post-surrender rent under Section 63(a)(9).

TGF, on the other hand, asserts that Herring's $73,000.00 payment was made in satisfaction of a separate obligation arising from the guarantee agreement; consequently, TGF's claim should not be reduced by that sum. TGF also notes that Herring did not file a claim against the estate for having paid the debtor's obligation. Thus, TGF argues, if its claim is allowed in full, Steve's liability will not exceed one year's rent; and the purpose and intent of Section 63(a)(9) is not subverted. In TGF's view, the claim should remain $98,059.49, despite the Herring payment.

## III

### DISCUSSION

■ Neither party has posed a persuasive argument in favor of its position. The Trustee's assertion places form above substance. In interpreting the contract, however, this Court must give effect to the mutual intention of the parties. Cal.Civ. Code § 1636. A lease guarantee agreement entered into at the same time as the lease is to be construed with the lease as one instrument defining the rights and liabilities of both the guarantor and lessee. Cal.Civ.Code § 1642; *Reios v. Mardis*, 18 Cal.App. 276, 278, 122 P. 1091 (1912). There is no longer a distinction between a surety and a guarantor; both promise "to answer for the debt, default, or miscarriage of another." Cal.Civ.Code § 2787.

Moreover, the terms of a contract of suretyship or guarantee are interpreted in the same fashion as other contracts. Cal.Civ. Code § 2837. Thus, the rule that specific clauses in a contract may be subordinated to more general clauses reflecting the general intent of the contract is applicable here. *See* Cal.Civ.Code § 1650.

■ Although the contract language could be read to suggest that Leahy and Herring were co-lessees, sharing joint and several liability, the signature page on the lease designates only Steve's Furniture Warehouse as the lessee. Clearly, Leahy and Herring signed the lease not as individual co-lessees, but as representatives of Steve's. In addition, the guarantee agreement clearly states that Leahy and Herring were guarantors of Steve's performance under the lease agreement. Since one cannot act as one's own surety, the existence of the guarantee agreement precludes characterization of Herring as a co-lessee. *Alexander v. Superior Court of Los Angeles County*, 91 Cal.App. 312, 315, 266 P. 993 (1928).

■ Under California law, a guarantor who has assumed responsibility for payment to a creditor is liable immediately upon default of the principal. Cal.Civ.Code § 2807. A creditor may proceed directly against the guarantor unless the guarantor requires the creditor to first proceed against the principal. Cal.Civ.Code § 2845. Once a guarantor has paid the principal's obligation, the guarantor is subrogated to the creditor's rights. Cal.Civ.Code § 2848. In effect, the guarantor acquires any right against the principal that the creditor previously had, which is why subrogation is often referred to as an assignment by operation of equity. *Meyers v. Bank of America National Trust & Savings Association*, 11 Cal.2d 92, 95, 77 P.2d 1084 (1938). Here, when Herring made the $73,000.00 payment to TGF, Herring was subrogated to TGF's rights against Steve's to the extent of his payment.

The assignment by operation of law in favor of Herring, calls into play the second *proviso* in Section 63(a)(9):

> "That in the case of an assignment of any such claim for damages, the court shall, in determining the amount thereof, examine the circumstances of the assignment and the consideration paid or to be paid therefor, and may allow the claim of the assignee in such amount, subject to the provisions of the foregoing proviso of this clause (9), as will be fair and equitable."

This portion of Section 63 entitles Herring to an independent claim against the estate, even though none has been filed. The amount of the claim should be considered by the Court as a factor in its determination of what is fair and equitable under the circumstances. The total lease obligation of the estate to the landlord and the subrogee is subject to the aggregate limit announced in Section 63(a)(9).

The total obligation recognized under the lease pursuant to the terms of Section 63(a)(9) is $98,059.49. The total of TGF's claim and Herring's claim exceeds that maximum aggregate by $73,000.00.

Under state law, absent bankruptcy, TGF would be entitled to its total claim of $778,400.00 against Steve's reduced only by Herring's paid share, and Herring would be entitled to $73,000.00 against Steve's.

When bankruptcy is imposed, the most equitable result is reached by apportioning the amount of each claim against § 63(a)(9)'s aggregate $98,059.49 limitation based upon a percentage of what TGF would be entitled to if there had been no bankruptcy. Specifically, in the absence of bankruptcy, TGF would have been entitled to recover $705,400.00.[2] Herring would have been entitled to $73,000.00 of the original $778,400.00 claim. The ratio that each claim bears to the full amount of the original claim can be multiplied by $98,059.49, the maximum allowed under Section 63(a)(9), to arrive at a figure representing the claim to which each would be fairly entitled.[3] TGF's *pro rata* portion of the allowable amount of the aggregate claims equals $88,863.26, and Herring's *pro rata* share would equal $9,196.23. This is the most equitable treatment for TGF under the circumstances, even though Herring has filed no claim, since the maximum obligation under the lease must not exceed the § 63(a)(9) cap.

The fact that Herring has filed no claim should not alter this result since one with a claim is under no duty to file it. To allow TGF more than its *pro rata* share would be improper in this Court's view since the potential of exceeding the § 63(a)(9) cap would then exist. For example, should there, by some stroke of good fortune, be excess funds remaining in the estate after distribution upon all filed claims, the notice provisions of BR 302(e)(5) might result in Herring filing a claim which, if TGF had been paid more than its *pro rata* share, would result in a total rental amount exceeding the limitations of § 63(a)(9).[4]

## IV

## CONCLUSION

TGF's claim will be allowed in the sum of $88,863.26. The above will constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752, and an Order will be entered accordingly.

---

2. This figure represents the net balance of its original $778,400.00 claim after deducting Herring's payment of $73,000.00 and the conceded $13,000.00 credit due Steve's for the advance rent deposit.

3. For TGF, $\frac{705,400}{778,400} \times 98,059.49 = \$88,863.26$.

   For Herring, $\frac{73,000}{778,400} \times 98,059.49 = \$9,196.23$.

4. Former Bankruptcy Rule of Procedure 302(e)(5) provides:

   > "(5) If all claims allowed have been paid in full, the court may grant a reasonable, fixed extension of time for the filing of claims not filed within the time hereinabove prescribed against any remaining surplus." Present BR 3002(c)(6) has language of similar import.