**Manix v. Commonwealth Security Systems Inc.**

*Eugene A. Luciw* and *Christopher S. Underhill,* for plaintiff.

*B. Christopher Lee,* for Commonwealth Security Systems Inc.

*William E. Haggerty,* for defendant.

PEREZOUS, *J.,* December 18, 1986 — In 1979, Lancaster Battery Co. Inc. (hereinafter Company) contracted with Commonwealth Security Systems Inc. (hereinafter Commonwealth) to have the latter install a burglar alarm system at the residence of Company's president, Stuart C. Manix and his wife, Sally S. Manix (hereinafter Manix). The residence was burglarized on September 4, 1981, and insurance covered a loss of $61,607.85. Company and Manix brought this subrogation claim against Commonwealth for alleged negligence and breach of contract.

The alarm system installed by Commonwealth included magnetic door contacts and a self-contained ultrasonic detection unit, together with a back-up battery system. Evidently, entry was made through a cellar door by breaking a pane of glass and opening the latch from the inside after the alarm system's "umbilical cord" which had been placed outside the walls of the house was cut, rendering it inoperative. Before the court is Commonwealth's motion for summary judgment which has been ably briefed by both parties.

Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions,

answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should be granted only in cases where the right is clear and free from doubt. To determine the absence of genuine issue of fact, the court must take the view of the evidence most favorable to the nonmoving party and any doubts must be resolved against the entry of the judgment. Badami v. Dimson, 226 Pa. Super. 75, 310 A.2d 298 (1973); Husak v. Berkel Inc., 234 Pa. Super. 452, 341 A.2d 174 (1975). The moving party has the burden of submitting evidence clearly dispelling the existence of a genuine factual issue. First Mortgage Company of Pennsylvania v. McCall, 313 Pa. Super. 54, 459 A.2d 406 (1983).

With these principles in mind the issues can be defined as follows:

Whether Lancaster Battery, as principal contracting party under a contract designed to benefit its chief executive officer, Stuart Manix, and his wife, Sally, as third-party beneficiaries, may maintain a cause of action against Commonwealth as defaulting party under that agreement;

Whether, as a matter of law, negligence, gross negligence and/or breach of a contractual duty on the part of a burglar alarm company with respect to its installation of a burglar alarm system can be the proximate cause of burglary losses sustained when the equipment fails to work or is deactivated as a consequence of such misfeasance;

Whether an insurer who pays a burglary loss can subrogate to the claims of its insured against a burglar alarm company which tortiously caused the loss; and,

Whether the limitation-of-liability clause embodied in the contract at issue precludes plaintiffs from maintaining a cause of action for breaches of contract which rise to the level of negligence and/or gross negligence.

The first issue can be put at rest promptly by granting summary judgment against Company since it sustained no loss whatsoever and is at best a nominal party, with the real parties in interest being Manix, under a classic third-party beneficiary contract.[1]

The second issue appears to have been answered in the case of Nirdlinger v. American District Telegraph Company, 245 Pa. 453, 91 Atl. 883 (1914) where our Supreme Court held the negligence of the supplier of a burglar alarm system could not be the proximate or legal cause of plaintiff's loss due to a burglary. It is worthy of mention that an alarm system, per se, does not prevent a burglary but rather merely gives notice of the unauthorized entry. There is no indication that a properly installed and functioning alarm system would have stopped the criminal act in the case at bar. While Commonwealth may have been negligent in performance of its contractual duties or in breach thereof, such negligence did not cause the loss. The burglar(s) caused the loss. Cf. Trexler Orchards Inc. v. Altronics, Inc., 51 D. & C. 2d 79 (1970).

Notwithstanding Nirdlinger, however, there are indications that the Pennsylvania law of proximate causation and intervening causes has not remained static since 1914. Indeed, Trexler Orchards may be

---

1. Alarm Device Manufacturing Company, the other defendant, is alleged in company's answer to have had nothing to do with any of the components of the alarm system installed for Manix.

outdated in view of subsequent case law such as Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978), wherein the Supreme Court clarified the concept of proximate causation in adopting the Restatement (Second) of Torts standard (§448). See Douglas W. Randall Inc. v. AFA Protective Systems Inc., 516 F. Supp. 1122 (E.D., Pa. 1981). Furthermore, a survey of recent similar cases shows a growing number of jurisdictions allowing for alarm company liability upon a finding that negligent installation of an alarm system was a proximate cause of burglary losses. Cf. 37 A.L.R. 4th 47 with 165 A.L.R. 1254.

Because of the disposition of the subsequent issues in this case, our refusal to deny Commonwealth's motion on this ground would not rescue Manix' cause of action from an adverse summary determination.

Turning to the third issue here posed, it is the considered view of this court that, even assuming arguendo plaintiffs are entitled to go to a jury on the question of causation, the doctrine of equitable subrogation would require the entry of judgment in Commonwealth's favor. Manix' losses were covered by an insurance policy issued by Continental Insurance Group, which is seeking to recover its indemnity payment through this subrogation action.

The doctrine of subrogation is based "on consideration of equity and good conscience . . . to promote justice . . . (and) is granted as a means of placing the ultimate burden of the debt upon the person who should bear it." Gildner v. First National Bank & Trust Co. of Bethlehem, 342 Pa. 145, 157, 19 A.2d 910, 915 (1941). Subrogation rests upon purely equitable grounds, and it will not be enforced against superior equities. Id. Subrogation exists wholly apart from contractual provision and, in any

instance, is to be enforced equitably. Roberts v. Fireman's Insurance Company of Newark, N.J., 376 Pa. 99, 107 A.2d 747 (1954).

As was stated in a California case holding that subrogation claims brought by insurers of alarm company customers are not permissible as a matter of law:

"Subrogation is equity's second method of compelling the ultimate payment by one who in justice and good conscience ought to make it — of putting the charge where it justly belongs. (Citation.) It is not an absolute right, but depends upon the superiority of the equities of him who asserts it over those of the one against whom it is sought. It will never be enforced when the equities are equal or the rights not clear." (Meyers v. Bank of America, etc. Association, 11 Cal. 2nd 92, 101 (1938)). Fireman's Fund Insurance Company v. Morse Signal Devices, 198 Cal. Rptr. 756, at 758 (1984).

Only if the person dealing with the wrongdoer is in a better position to avoid the loss than is the insured or the surety does the surety have the superior equity permitting it to recover as subrogee. The insurance company, which charges its premiums based on the extent of insurance coverage, is in the best position to spread the risks assumed. Fireman's Fund, supra, at 759.

Nor does the case of Employers Mutual Liability Insurance Company of Wisconsin v. Melcher, 378 Pa. 598 107 A.2d 874 (1954), offer Manix any relief as it is inapposite in that it deals with the principles of contractual indemnification rather than the right of equitable subrogation asserted by Commonwealth in the case at hand.

The last issue concerning the limitation-of-liability clause embodied in the present contract at issue remains to be addressed. Since the Manixes are

third-party beneficiaries of this contract, they are bound by its terms. Notwithstanding any finding of liability on the part of Commonwealth, therefore, there is an express limitation of damages to repayment of any fees and costs received.

In this court's judgment, Commonwealth expressly and explicitly set forth in the contract that it is not an insurer and is not responsible for any loss or damage sustained beyond repayment of fees and costs received. Under the rationale of Lobianco v. Property Protection Inc., 292 Pa. Super. 346, 437 A.2d 417 (1981), such a clause in security alarm contracts limiting liability is valid and enforceable.

Insofar as Company's contention that an exculpatory clause must be construed strictly against the party asserting it, such language should be viewed from the broader perspective that while "rules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of the parties to an instrument [t]hey are not meant to be applied as a substitute for that quest." Burns Manufacturing Co. Inc. v. Boehm, 467 Pa. 307, 313 n.3, 356 A.2d 763, 766 (1976). Such a bright line rule (strict construction without more) is directly contrary to Zimmer v. Mitchell and Ness, 253 Pa. Super. 474, 385 A.2d 437 (1978), which held the lack of the term "negligence . . . not fatal." Zimmer involved an injury resulting from the rental of ski equipment where the rental agreement released defendant from "any liability" where the court noted that this included negligence, further opining that all contracts should be read "as a whole" and "with common sense." Id., pp. 478-479.

Moreover, exculpation from claims arising out of negligence, as well as contract, is permitted. See Wedner v. Fidelity Security Systems Inc., 228 Pa. Super. 67, 307 A.2d 429 (1973) — affirmance by an

equally divided court — cited in Lobianco, supra, at 352. Furthermore, cases from a host of other jurisdictions have considered attempts to avoid exculpatory/limitation of liability/liquidated damages clauses on various grounds — that such clauses: are against public policy per se or because a central station alarm industry contract affects the public interest; or, are unconscionable and amount to contracts of adhesion because of a disparity in bargaining power; or, amount to a penalty and are unenforceable — all of which contentions have been uniformly rejected.

As to Manix' remaining argument that the disclaimer at issue does not insulate Commonwealth from a claim of gross negligence, this averment in the complaint is nothing more than a rephrasing of a description of ordinary negligence and does not approach the reckless-disregard-of-consequences standard that would justify a presumption of willfulness or wantonness.[2]

As a general rule, Pennsylvania law recognizes liability based on differing standards of care, not differing degrees of negligence, Ferrick Excavating and Grading Co. v. Senger Trucking Co., 506 Pa. 181, 484 A.2d 744 (1984), and in the instant case that standard was defined by the contract. Raab v. Keystone Insurance Co., 271 Pa. Super. 185, 412 A.2d 638 (1979). Thus, conceptually, gross negligence has had sparing uses. Martz v. New Oxford Community Fire Co. Inc. 17 Adams 95 (1976) (exception to Good Samaritan Statute); Williams v.

---

2. A limitation-of-liability provision has been rendered inapplicable by one court on a finding of gross negligence where an alarm company employee had turned down the sensitivity level of the alarm to a point at which it could not detect the entry of a person into the customer's store. Douglas W. Randall Inc., supra.

Civil Service Commission, 9 Pa. Commw. 437, 306 A.2d 419 (1973), (basis for civil servant dismissal); Kasanovich v. George, 348 Pa. 199, 34 A.2d 523 (1943) (exception to defense of contributory negligence).

Consequently, the above rationale points to these conclusions:

"An alarm system installer has no liability pursuant to an exculpatory clause; perhaps there *should* be liability if the system was installed improperly but, such liability would be limited under the terms of the contract."

Although not essential to the disposition of Commonwealth's motion in light of the above discussion and the subsequent order, this court feels constrained to point out yet another possible reason for a similar result even though it was not raised in the motion for summary relief. The contract in question also contains a warranty by Commonwealth of the proper mechanical functioning of all equipment for a period of one year. Commonwealth's new matter avers that the alarm system was installed on or about January 22, 1979. According to the contract, payment was to be accomplished by a down payment with an equal amount due (15) days after installation. These facts would lead inalterably to the conclusion that the alarm system was out of warranty at the time of the burglary and thus Commonwealth was not liable.

Nevertheless, for the reasons previously discussed, the court enters judgment as per the ensuing

## ORDER

And now, December 18, 1986, upon consideration of defendant's, Commonwealth Security Systems Inc., motion for summary judgment and de-

fendant's memorandum of law and reply brief, together with plaintiffs' legal brief in opposition thereto, and for the reasoning postulated in the opinion accompanying this order, partial summary judgment is granted in favor of defendant, Commonwealth Security Systems Inc., limiting the damages recoverable by plaintiffs, Stuart C. Manix and Sally S. Manix, to the fees and costs received by such defendant and, summary judgment is entered in favor of Commonwealth Security Systems Inc., and against plaintiff, Lancaster Battery Co. Inc.