Roberto **VALENZUELA**, an individual, and **Ruby Valenzuela**, an individual, and **Pearl of the Orient, Inc.**, a California corporation doing business as **Manila Fine Jewelers**, Plaintiffs,

v.

**ADT SECURITY SERVICES, INC.**, a Delaware corporation; and **DOES A through 100**, inclusive, Defendants.

**Case No. CV09-2075 DMG (FFMx).**

United States District Court, C.D. California, Western Division.

April 29, 2010.

Order Denying Reconsideration June 4, 2010.

Jason D. Carter, Leonard Steiner, Steiner and Libo, Beverly Hills, CA, for Plaintiffs.

Eva M. Weiler, Shook Hardy & Bacon LLP, Irvine, CA, for Defendants.

**ORDER RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38, 39]**

DOLLY M. GEE, District Judge.

This matter is before the Court on (1) Plaintiffs' motion for partial summary judgment as to Plaintiffs' first cause of action for gross negligence, second cause of action for breach of contract, and as to Defendants' sixth, tenth, and eleventh affirmative defenses and (2) Defendant's motion for summary judgment. The Court heard oral argument on March 19, 2010, after which the Court took the matter under submission. For the reasons set forth below, Plaintiffs' motion for partial summary judgment is GRANTED in part and DENIED in part and Defendant's motion for summary judgment is GRANTED in part and DENIED in part.[1]

---

1. Defendant filed evidentiary objections on February 26, 2010 and again on March 3, 2010 [docket numbers 62 and 80]. To the extent such objections are not otherwise addressed by the Court in this Order, the Court

## I.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiffs filed a complaint in the Los Angeles Superior Court on February 24, 2009, and a first amended complaint in this Court on June 5, 2009. Defendant filed a Notice of Removal on March 25, 2009, removing the action to this Court on the basis of diversity jurisdiction. Plaintiffs allege the following causes of action: (1) gross negligence; (2) breach of contract; and (3) conversion. Plaintiffs seek compensatory damages in the amount of $821,000, punitive damages, and attorneys' fees and costs.

On January 25, 2010, Plaintiffs filed a motion for partial summary judgment ("Plaintiffs' Motion") and Defendant filed a motion for summary judgment ("Defendant's Motion"). On February 26, 2010, the parties filed their respective opposition briefs and on March 5, 2010, the parties filed their replies.

### A. *Plaintiffs' Jewelry Business*

Plaintiffs, Ruby and Roberto Valenzuela, own and operate Pearl of the Orient, Inc., doing business as Manila Fine Jewelers, a retail jewelry store. (Ruby Valenzuela ("Valenzuela") Decl. ¶ 2.) Since September 2002, Plaintiffs have protected their premises with an ADT Security Services, Inc. ("ADT") alarm system and security services, which included a burglar alarm system, alarm monitoring, and signal receipt notification services. (Valenzuela Opp. Decl. ¶ 11, Ex. C.) With signal receipt and notification services in place, ADT was required to immediately call the police, Plaintiffs, and Plaintiffs' local emergency contact person to notify them whenever an alarm occurred. (*Id.*)

On September 20, 2008, at approximately 10:00 a.m., while Plaintiffs were driving to work, Mrs. Valenzuela received a call on her cell phone from Ms. Chua (the owner of the dress shop from whom Plaintiffs rented their office space) notifying them that their store had been burglarized. (Valenzuela Opp. Decl. ¶ 25.) When Mr. and Mrs. Valenzuela arrived at the store at approximately 11:00 a.m., the police had already arrived and were conducting an investigation. (*Id.*) ADT's event history report, central station number U6843007700, indicates that on September 20, 2008, at 12:44 a.m., ADT received and registered a motion detector burglar alarm in Plaintiffs' back office. (Sims Opp. Decl. ¶ 15, Ex. D; Weiler Decl. 3, Ex. B; Mooney Depo. pp. 120–122.) The alarm signal, however, was not transmitted to ADT's monitoring operators, and neither Plaintiffs, Plaintiffs' local emergency contact, nor the local police were notified of that alarm because ADT had incorrectly listed Plaintiffs' account as "out of service." (Valenzuela Opp. Decl. ¶¶ 10, 34–35; Steiner Decl. ¶ 12, Ex. E; Mooney Depo. pp. 120–22, 163–64.)

According to Mrs. Valenzuela, had ADT notified Plaintiffs of the burglar alarm at 12:44 a.m. on September 20, 2008, she or her husband could have driven to the store within an hour or less and she could have called the police. (Valenzuela Opp. Decl. ¶ 37.)

### B. *The Cellular Wireless Backup Upgrade*

On or about July 3, 2008, Plaintiffs signed an agreement (the "Upgrade Agreement") with ADT, by which ADT agreed to upgrade Plaintiffs' alarm system by including a cellular wireless backup

---

denies the objections as moot because they pertain to evidence not relied upon by the Court in making its findings herein.

connection to ADT, as parallel (or redundant) protection, and a 360 degree motion detector in their back office above the safe. (Valenzuela Opp. Decl. ¶¶ 13–14, Ex. D) The cellular backup would transmit an alarm signal to ADT even if Plaintiffs' phone lines were cut or otherwise disabled, while leaving the telephone line connection as the primary mode of communication between Plaintiffs' alarm system and ADT. (*Id.*)

According to Plaintiffs, Defendant did not do as promised. (Valenzuela Opp. Decl. ¶ 15.) Plaintiffs contend that when ADT installed the cellular backup, Defendant effectively deactivated Plaintiffs' alarm system and monitoring and notification systems. (*Id.*) On July 10, 2008, ADT's technician performed at least three tests to determine if Plaintiffs' alarm system was still communicating with ADT. (Steiner Decl. ¶ 11, 14, Exs. D, G; Wright Depo. pp. 51, 53, 62–65.) The last test entry in ADT's central station log notes "had to change u acct to prim lost all sigs," which means that there was no telephone signal and that the cellular backup was changed to the primary connection. (*Id.*) Defendant concedes that when the cellular backup was installed into Plaintiffs' alarm system, the primary telephone line connection was lost and the cellular account became the primary and only connection. (Steiner Opp. Decl. ¶¶ 12, Ex. E; Mooney Depo. pp. 145–54.)

On July 19, 2008, August 19, 2008, and September 19, 2008, the ADT alarm system automatically conducted transmission tests of Plaintiffs' alarm system and the cellular backup communication system. (Steiner Opp. Decl. ¶¶ 12, 15, 21, 25, Exs. E, H; Mooney Depo. pp. 107–109.) Each

test, which was received by Defendant and logged in ADT's event history report for Plaintiffs' cellular monitoring account, registered a comment that Plaintiffs' cellular monitoring account and alarm system were "out of service." (Steiner Opp. Decl. ¶¶ 12, 15, 21, 25, Exs. E, H; Mooney Depo. pp. 95, 107–110.) As a result of the monitoring account being coded "out of service," the burglar alarm received by ADT on September 20, 2008 at 12:44 a.m. was never transmitted to an operator to act upon the signal. (Steiner Opp. Decl. ¶¶ 12, Ex. E; Mooney Depo. pp. 163–64.)

At no time did ADT ever inform Plaintiffs that their new ADT account was in an "out of service" status.[2] (Valenzuela Opp. Decl. ¶¶ 20–23.) When the ADT technician finished the installation, he did not tell Plaintiffs that there were any problems with the system, but rather, told them that everything was working and departed. (Valenzuela Opp. Decl. ¶ 17.) Within a few days of the installation, ADT told Plaintiffs that they had a new customer billing account and that their old billing account would be closed. (Valenzuela Decl. ¶ 18.) On August 4, 2008, Plaintiffs received notice from ADT that their old billing account, account number 01200116930207, would be cancelled within 30 days. (Valenzuela Opp. Decl. ¶ 19, Ex. K.)

Plaintiffs continued to be billed by ADT and to pay for alarm, monitoring, and notification services and parallel protection of a telephone primary connection with cellular backup. (Valenzuela Opp. Decl. ¶ 20.) At the time of the burglary, Plaintiffs' account was current, paid in full and should have been active. (Valenzuela Opp. Decl. ¶ 35.)

---

2. The Event History Report indicates that Plaintiffs' account was placed "In service" on July 10, 2008 and that the first "OOS" message indicating that the account was "out of service" occurred on July 19, 2008, more than a week after Mr. Wright installed the cellular phone backup. *See* Steiner Opp. Decl. ¶ 12, Ex. E; Mooney Depo. p. 11, Ex. 13.

### C. *ADT Visits to Plaintiffs' Premises*

Sometime in early July, a few days after meeting with the ADT sales representative to discuss the upgrade to Plaintiffs' security system, ADT technicians came to Plaintiffs' premises, ostensibly to install the cellular backup. (Valenzuela Opp. Decl. ¶ 16; Roberto Valenzuela Decl. ¶ 4.) Both men looked around inside the bridal shop, at the exteriors of Plaintiffs' premises, and inside Plaintiffs' back office; they did no work, however, to install the cellular backup or upgrades. (*Id.*)

According to Plaintiffs, there were a number of unscheduled visits from what appeared to be ADT representatives. In early to mid September 2008, Roberto Valenzuela saw someone in an ADT uniform in the bridal shop checking out the suite and the exterior walls of Plaintiffs' shop. (Roberto Valenzuela Decl. ¶ 6.) Neither Plaintiffs, nor Ms. Chua, had asked ADT for services at that time, nor were Plaintiffs or Ms. Chua informed by ADT that it was sending out a technician. (Roberto Valenzuela Decl. ¶ 6; Steiner Opp. Decl. ¶ 43, Ex. I; Chua Depo. pp. 33–35.) Ms. Chua testified that sometime in 2008 before the burglary, a person she identified as an ADT representative walked into the suite and started looking around. (Steiner Opp. Decl. ¶ 45, Ex. I; Chua Depo. pp. 33–35.) A bridal shop employee, Maria Consuelo Zetter, also testified that a person in an ADT uniform came into the store before the burglary and was looking around the area of the dressing room adjacent to Plaintiffs' back office. (Steiner Opp. Decl. ¶ 44, Ex. J; Zetter Depo. 11–12.)

### D. *Sophistication of the Burglars*

According to Plaintiffs' expert witness, Douglas Sims, the burglars were familiar with the layouts of both Plaintiffs' back office and the neighboring dress shop, as well as both alarm and security systems, and Plaintiffs' security cameras and safe.

(Sims Opp. Decl. ¶ 23.) As a general practice, however, Plaintiffs never allowed anyone in their back office. (Valenzuela Opp. Decl. ¶ 9.) The exceptions to this were the ADT technicians, installers and sales representatives who made periodic visits to check, repair and upgrade that system. (*Id.*) The rooftop of the strip mall in which Plaintiffs' premises was located was nondescript. (Sims Opp. Decl. ¶ 22.) It contained no references identifying the area above Plaintiffs' premises or otherwise distinguishing it from the dress shop or adjacent businesses. (*Id.*)

Mr. Sims estimates that it took the burglars at least three hours or more to commit and complete the burglary from the time the motion sensor was tripped at 12:44 a.m. on September 20, 2008. (Sims Opp. Decl. ¶ 20.) Defendant objects to Mr. Sims' testimony on the grounds that it is not based on sufficient facts, lacks foundation and is based on hearsay.

"The Federal Rules of Evidence allow expert testimony that will assist a trier of fact in understanding the evidence or in determining a fact at issue, so long as '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Boyd v. City and County of San Francisco*, 576 F.3d 938, 945 (9th Cir.2009) (citing Fed.R.Evid. 702).

Mr. Sims declares that he is a qualified expert witness in light of the following: (1) his 28–year career as Detective Sergeant with the Los Angeles Police Department, including an assignment to the Burglary Division for 18 years; (2) experience conducting more than 100 burglary crime scene investigations; (3) eight years of experience with Bank of America Corporate Security, during which he was responsible for the bank's security operations;

and (4) his receipt of an Advanced Law Enforcement Post Certificate from the State of California Department of Justice. (Sims Opp. Decl. ¶ 2.) His testimony is based on: (1) his visit to and examination of Plaintiffs' premises; (2) discussions with Plaintiffs concerning their safe; (3) a conversation with Ms. Chua about the burglary; (4) a review of the various police reports and narratives, photographs of the crime scene, the ADT event history report, and Plaintiff's invoices related to the safe. (Sims Opp. Decl. ¶¶ 3–4.) On this basis, the Court finds Mr. Sims' expert testimony to be admissible evidence.

### E. *Risk Allocation Provision in the Upgrade Agreement*

The first page of the Upgrade Agreement provides, "ATTENTION IS DIRECTED TO THE WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE." [3] (Lopeztello Decl. ¶ 3, Ex. A; Valenzuela Opp. Decl. ¶ 14, Ex. D.) (emphasis in original). Paragraph B of the Upgrade Agreement states in relevant part:

THE PURCHASER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRAN-

TY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE. (*Id.*) (capitalization in original). Paragraph E of the Upgrade Agreement states in relevant part:

IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION.... IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SER-

---

**3.** Paragraph N of the Upgrade Agreement provides that the Agreement "CONSTITUTES THE ENTIRE AGREEMENT BETWEEN

THE CUSTOMER AND ADT." (Valenzuela Opp. Decl. ¶ 14, Ex. D.) (emphasis in original).

VICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.

(*Id.*) (capitalization in original).

## II.

### *DISCUSSION*

#### A. *Legal Standard*

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *accord Farrakhan v. Gregoire,* 590 F.3d 989, 1001 (9th Cir. 2010). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mattos v. Agarano,* 590 F.3d 1082, 1085 (9th Cir.2010). "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *See Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *accord Bias v. Moynihan,* 508 F.3d 1212, 1218 (9th Cir.2007). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### B. *Whether Defendant's Conduct Constituted Gross Negligence*

In this case, Defendant ADT entered into a contractual relationship with Plaintiffs to provide them with alarm monitoring services. That ADT failed to uphold its end of that contractual bargain does not appear to be in dispute and will be discussed in greater detail, *infra.* What is in dispute is whether ADT's negligent per-

formance of its contractual duties also gives rise to tort damages. It is a well established legal principle that conduct causing a breach of contract becomes tortious only when it also violates a duty wholly independent of the contract.[4] *Erlich v. Menezes*, 21 Cal.4th 543, 551, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999). In a valiant effort to demonstrate their entitlement to tort damages, Plaintiffs point to facts which they claim are evidence of gross negligence or, even worse, fraud.

■ In California, "gross negligence" is defined as "the want of even scant care or an extreme departure from the ordinary standard of care." *See Royal Ins. Co. of America v. Southwest Marine*, 194 F.3d 1009, 1015 (9th Cir.1999). In *Royal Ins. Co. of America*, the Ninth Circuit noted that Black's Law Dictionary defines "gross negligence" as " '[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness.' " *Id.* Plaintiffs contend that ADT was grossly negligent because: (1) ADT failed to properly install and activate Plaintiffs' alarm system; (2) ADT failed to correct the problems, despite having knowledge of defects in the system; (3) ADT failed to disclose this information to Plaintiffs; and (4) ADT's technician told Plaintiffs that everything was working and departed after the installation of the cellular monitoring upgrade.

ADT, on the other hand, argues that in order to establish gross negligence, Plaintiffs must first demonstrate that ADT owed Plaintiffs a tort duty independent of the duties arising from the contract. ADT asserts that Plaintiffs are unable to do so.

### 1. Material Misrepresentations to Plaintiffs

■ The elements of an intentional misrepresentation claim in California are: (a) Defendant misrepresents material facts; (b) with knowledge of the falsity of the representations or the duty of disclosure; (c) with the intent to defraud or induce reliance; (d) which induces justifiable reliance by Plaintiffs; (e) to Plaintiffs' detriment. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir.2009); *see also Hahn v. Mirda*, 147 Cal.App.4th 740, 748, 54 Cal.Rptr.3d 527 (2007).

■ Here, Plaintiffs allege that Defendant made an intentional misrepresentation when Gerald Wright, the ADT technician who installed the upgraded system, informed Plaintiffs that the alarm system was installed properly. Plaintiffs, however, have not presented any evidence that Mr. Wright knew or should have known that his statements of reassurance were untrue. Plaintiffs, in fact, concede that ADT did receive a burglar alarm signal on September 20, 2008, which indicates the alarm system was connected and functioning at that time, albeit with the cellular connection as the primary rather than the backup. As Defendant points out, it was ADT's improper coding of Plaintiffs' account as "out of service"—not a faulty installation—that caused ADT to fail to notify Plaintiffs and the police of the alarm signal that ADT actually received. There is no nexus between Mr. Wright's reassurances regarding the installation of the cell phone back up and Plaintiffs' subsequent

---

**4.** Tort liability has been imposed in contract cases in certain limited contexts such as where the breach of duty causes physical injury, breach of the covenant of good faith and fair dealing in insurance contracts, wrongful termination in violation of public policy, or fraudulent inducement of a contract. *Erlich, supra,* 21 Cal.4th at 551–52, 87 Cal.Rptr.2d 886, 981 P.2d 978 [citations omitted].

failure to receive notice of the alarm on September 20, 2008.

Thus, while the parties may dispute whether the alarm system was properly installed and whether Mr. Wright was wrong in conveying assurances that all was well, those disputed facts are not material to the Court's determination of whether Defendant's conduct constituted fraud or gross negligence. The crux of the matter is that Plaintiffs cannot show that Mr. Wright's installation of the system or his words of assurance were substantial factors in causing Plaintiffs not to receive notice of the burglar alarm.

### 2. The Existence of an Independent Tort Duty

Plaintiffs further allege that as a result of the July 19, August 19, and September 19 automatic computerized tests of the alarm system, ADT knew or should have known that Plaintiffs' alarm system was improperly coded "out of service" and nevertheless failed to correct, or notify Plaintiffs of, the problem. Plaintiffs, however, have not presented any evidence that ADT knew that Plaintiffs' alarm system was improperly coded "out of service."

Furthermore, according to ADT, a computer glitch in one of ADT's computer systems caused Plaintiffs' account to be coded incorrectly as "out of service" on July 10, 2008. (Weiler Opp. Decl. ¶ 2, Ex. A; Mooney Depo. pp. 196–201.) Plaintiffs object to Mr. Mooney's testimony on the grounds that it lacks foundation, that Mr. Mooney is not competent to testify and does not have personal knowledge to establish that a computer error occurred rather than human error, and that it is inadmissible hearsay. Plaintiffs contend that Mr. Mooney's testimony is based on his suspicion, or assumption, that a computer error caused Plaintiffs' account to be coded "out of service" and point to the following admissions made by Mr. Mooney:

(1) he was not a computer programmer or code writer; (2) the computer commands were outside of his area of understanding; (3) he did not do an investigation to determine why the system coded Plaintiffs' account "out of service" on July 19, August 19, and September 19; and (4) he consulted with Brooke Smith, an ADT system administrator, as to the event history.

Regardless of whether it was a computer or human error that caused Plaintiffs' account to be coded as "out of service," California courts have repeatedly held, in similar cases, that the alarm company's failure to notify the relevant parties of a received signal neither constitutes gross negligence nor evidences a duty arising outside of the contract. The Court, therefore, finds Mr. Mooney's testimony both admissible and relevant to the extent that it constitutes ADT's admission that an error occurred at all. The parties' dispute as to whether Plaintiffs' account was coded "out of service" because of human error or a computer glitch is not material to the Court's findings.

In *Fireman's Fund Ins. Co. v. Morse Signal Devices,* 151 Cal.App.3d 681, 198 Cal.Rptr. 756 (1984), the plaintiff alleged that where the alarm companies received alarm signals, but failed to notify the proper officials, such a "knowing" failure was a demonstration of "reckless and wanton disregard" of the consequences and constituted gross negligence. *See id.* at 686, 691, 198 Cal.Rptr. 756. There, in each of the eleven separate incidents, the alarm system failed to function properly, either because of mechanical failure or because of the failure of the alarm companies' personnel to notify police or fire departments upon receiving signals from otherwise properly functioning systems. On those facts, the court held that the plaintiff's allegations were insufficient to state a

cause of action for gross negligence. *See id.* at 690–91, 198 Cal.Rptr. 756.

In *Feary v. Aaron Burglar Alarm Inc.,* 32 Cal.App.3d 553, 108 Cal.Rptr. 242 (1973), the appellant, a jewelry store owner, contracted with the respondents to install, and later to upgrade, a burglar alarm system. *See id.* at 555, 108 Cal.Rptr. 242. Six years after entering into that agreement, the appellant's business was burglarized and $100,000 of jewelry was stolen. Pursuant to stipulation, the trial court concluded that the respondents were negligent in the installation and maintenance of the burglar alarm system, the respondents breached an express and implied warranty to the appellant, and the appellant was damaged as a proximate result of the respondents' negligence and breach of warranty. On those facts, the appellate court held that "[t]here is no allegation of property damage or the breach of any duty other than that contemplated by the contract." *Id.* at 558, 108 Cal.Rptr. 242. Citing *Better Food Markets, Inc., infra,* the court limited the appellant's damages to those provided for in the agreement between the parties.

In *Better Food Markets, Inc. v. American District Telegraph Co.,* 40 Cal.2d 179, 253 P.2d 10 (1953), the plaintiff sought to recover tort damages that resulted from the defendant's failure to properly call a guard or inform the police for nine minutes after receiving the burglar alarm signal, which permitted a burglar to escape with $35,930 from the plaintiff's food market. *See id.* at 182, 253 P.2d 10. The court found no duty separate from the one created by the parties' contract. The court therefore held that "[a]lthough an action in tort may sometimes be brought for the negligent breach of a contractual duty [citation], still the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created that duty." *Id.* at 188, 253 P.2d 10. Thus, on facts analogous to those presented in the instant case, the court found no independent tort duty and barred the plaintiff's tort claims.

Furthermore, it is well recognized in California that " 'courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.' " *Erlich v. Menezes,* 21 Cal.4th 543, 551, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999), citing *Freeman & Mills v. Belcher Oil Company,* 11 Cal.4th 85, 107, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995). The failure to perform a contractual obligation is never a tort unless it constitutes a failure to perform an independent legal duty. *Id.* at 551, 87 Cal. Rptr.2d 886, 981 P.2d 978. Whether a defendant owes a duty of care arising from a source outside of the parties' contract is a question of law. The mere negligent breach of a contract is insufficient to give rise to tort damages. *See id.* at 552, 87 Cal.Rptr.2d 886, 981 P.2d 978. While California courts have recognized tortious breach of contract claims in the insurance contract context, the "insurance cases represent 'a major departure from traditional principles of contract law' " and "any claim for automatic extension of that exceptional approach ... should be carefully considered." *Id.* at 553, 87 Cal.Rptr.2d 886, 981 P.2d 978.

As a result, a tortious breach of contract may be found only when: "(1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or sub-

stantial consequential damages.'" *Id.* at 553–54, 87 Cal.Rptr.2d 886, 981 P.2d 978. Here, Plaintiffs allege that ADT "intentionally, willfully, or recklessly" ignored the burglar alarms that registered at Plaintiffs' premises on September 20, 2008 at 12:44 a.m., failed to notify the police or Plaintiffs of the alarm, failed to respond to the alarm, and turned off the alarm. (FAC ¶¶ 18, 25, 27.)

While the Court is not unsympathetic to Plaintiffs' predicament, Plaintiffs have not presented any material evidence from which the Court can infer that any of the *Erlich* exceptions to the general rule against tortious breach of contract apply. Plaintiffs cite to *North American Chemical Co. v. Superior Court,* 59 Cal.App.4th 764, 69 Cal.Rptr.2d 466 (1997), for the proposition that California has also recognized that a contract to perform services gives rise to a duty of care that requires that such services be performed in a competent and reasonable manner and the failure to do so may be both a breach of contract and a tort. *See id.* at 774, 69 Cal.Rptr.2d 466. The problem with Plaintiffs' reliance on *North American Chemical Co.* is that in *Erlich,* the California Supreme Court both acknowledged and distinguished the holding in *North American Chemical Co.* when it affirmed the general rule against a finding of tortious breach of contract. *See Erlich,* 21 Cal.4th at 551, 87 Cal.Rptr.2d 886, 981 P.2d 978 ("This is true; however, conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.").

Plaintiffs have not pointed to, nor has this Court found, a single case in which a court held, on facts similar to those presented here, that an alarm company's failure to notify the relevant parties of a received burglar alarm signal created a duty outside of the contract and therefore constituted gross negligence. Plaintiffs have not identified a duty that arises outside of the Upgrade Agreement that Defendant has breached. Instead, Plaintiffs contend that on numerous occasions, and for apparently inexplicable reasons, ADT failed to perform its duties arising under the Agreement, i.e., to install and monitor an alarm system and provide signal notification services.

Accordingly, whether ADT failed to properly install the cellular backup monitoring system, or to notify the police and Plaintiffs upon receiving the burglar alarm signal on September 20, 2008, the evidence presented by the parties points only to ADT's failure to provide the services it agreed to provide under the Agreement itself. Finding no disputed issue on that key fact, the Court finds as a matter of law that Defendant owed no independent tort duty to Plaintiffs and therefore grants Defendant's motion, and denies Plaintiffs' motion, as to the first cause of action for gross negligence.

## C. *Defendant's Breach of the Upgrade Agreement*

Plaintiffs contend that ADT's conduct also constitutes breach of contract. As to that contention, there can be no dispute. Defendant admits that although Plaintiffs contracted for a cellular monitoring system as a backup to their primary telephone line, the cellular monitoring system was installed as the primary system and the telephone line was disconnected. (Steiner Opp. Decl. ¶¶ 12, Ex. E; Mooney Depo. pp. 145–54.) Defendant further admits that whether human error or a computer glitch caused Plaintiffs' alarm account to be coded as "out of service," an error occurred such that the burglar alarm signal received at 12:44 a.m. on September 20, 2008 was not transmitted to the police, Plaintiffs or Plaintiffs' local emergency

contact, despite the fact that Plaintiffs' account was current, paid in full and active. (Weiler Opp. Decl. ¶ 2, Ex. A; Mooney Depo. pp. 196–201;Valenzuela Opp. Decl. ¶ 35; Steiner Opp. Decl. ¶¶ 12, Ex. E; Mooney Depo. pp. 163–64.)

In order to establish liability on a claim for breach of contract, Plaintiffs must be able to establish that (1) there was a contract, (2) Plaintiffs' performance or excuse for nonperformance, (3) Defendant's breach, and (4) damage to Plaintiffs that resulted from Defendant's breach. *See Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008). Here, the only element disputed by the parties is whether Defendant's breach of contract· caused Plaintiffs' damages. In its opposition, ADT contends that Plaintiffs are unable to prove causation of damages, i.e., that *but for* the alarm system glitch, the burglary would have been thwarted. (Def.'s Op. at 10.) In California, however, the test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages. *See U.S. Ecology, Inc. v. State*, 129 Cal.App.4th 887, 909, 28 Cal.Rptr.3d 894 (2005). "The term 'substantial factor' has no precise definition, but 'it seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.'" *Id.*

The parties dispute whether, and to what extent, the alarm system glitch was a substantial factor in Plaintiffs' ability to thwart the burglars, or at least, to minimize the damage caused by the burglars. Mr. Sims, Plaintiffs' expert, estimates that it took the burglars three hours from the time the burglar alarm signaled at 12:44 a.m. on September 20, 2008 for the burglars to commit and complete the burglary. Mrs. Valenzuela estimates that it would have taken her less than an hour to drive to the store had she been notified

at that time and certainly less time than that to obtain follow up from the police or a local emergency contact. (Sims Opp. Decl. ¶ 20; Valenzuela Opp. Decl. ¶ 37.)

The very purpose of Plaintiffs' contract with Defendant was to provide a mechanism by which Plaintiffs' properly would be monitored by a security system and by which Plaintiffs would be notified of a security breach—presumably, few consumers would invest in an alarm system if there were no correlation between the proper functioning of the alarm system and the potential ability to thwart a burglary in progress. Accordingly, the Court finds that a genuine dispute of material fact exists as to whether Defendant's breach caused the damages that Plaintiffs suffered.

### D. *The Risk Allocation Provisions of the Upgrade Agreement*

Defendant further contends that even if Plaintiffs are able to establish liability under their breach of contract claim, any damages that Plaintiffs are entitled to recover are limited by the risk allocation provisions in the Upgrade Agreement. Specifically, Defendant points to the following limitation-of-damages clause in paragraph E of the Agreement:

IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR

CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY.

(*Id.*) (capitalization in original).

Citing to *City of Santa Barbara v. Superior Court*, 41 Cal.4th 747, 755, 777, 62 Cal.Rptr.3d 527, 161 P.3d 1095 (2007) and *Leon v. Family Fitness Center*, 61 Cal. App.4th 1227, 1233, 71 Cal.Rptr.2d 923 (1998), Plaintiffs argue that the risk allocation provisions of the Agreement do not apply for two reasons: (1) the provision is void because parties cannot release future acts of gross negligence or intentional acts; and (2) the provision is inapplicable because a release purporting to exculpate a tortfeasor from damage claims based on its future negligence or misconduct must clearly, unambiguously, and explicitly express the specific intent of the subscribing parties. As discussed above, however, Plaintiffs have not demonstrated that Defendant owed Plaintiffs a duty independent of that which arose from the parties'

Agreement. Defendant, therefore, cannot be held liable for gross negligence. By extension, Plaintiffs' contention that the risk allocation provisions are void because Defendant's conduct rose to the level of gross negligence also fails.

In addition, the court in Leon recognized that where a release of all liability for any act of negligence is given, the release applies to any such negligent act provided the negligence is "reasonably related" to the purpose for which the release is given. *See Leon*, 61 Cal.App.4th at 1235, 71 Cal.Rptr.2d 923. Here, although Plaintiffs acknowledge that the risk allocation provisions contemplated ADT's negligence in responding to alarms or the mechanical failure of the components of the alarm system installed at Plaintiffs' premises, Plaintiffs argue that the release language does not apply to injuries "such as those that resulted in this action." (Pl.'s Mot. at 17.) Plaintiffs' argument is unavailing. As discussed above, Defendant is liable only for breaching the terms of the Upgrade Agreement, which terms were specifically contemplated by the risk allocation provisions. Accordingly, the Court finds that Defendant's negligence in this case is "reasonably related" to the very purpose for which the release was given.

The Court is also persuaded that the limitation-of-damages clause applies because of the explicit terms of the Upgrade Agreement itself.[5] Paragraph E of the

---

5. Paragraph B of the Upgrade Agreement also sets forth limitations on Defendant's liability. Paragraph B provides in relevant part:

ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE.

(Lopeztello Decl. ¶ 3, Ex. A; Valenzuela Opp. Decl. ¶ 14, Ex. D.) (capitalization in original). Defendant, however, does not argue that paragraph B is a complete waiver of Defendant's liability as to any and all liability under the Upgrade Agreement. Rather, Defendant argues, and effectively concedes, that should Plaintiffs prevail in their action for breach of contract, Plaintiffs may recover the sum equal to 10% of the annual service charge or $1000, whichever is greater. (Def.'s Mot. at 17.)

Upgrade Agreement states unambiguously that the risk allocation provisions apply in the case of ADT's "nonperformance" of its obligations under the contract or its "negligence, active or otherwise":

> THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.

(Lopeztello Decl. ¶ 3, Ex. A; Valenzuela Opp. Decl. ¶ 14, Ex. D.) (capitalization in original).

Furthermore, as Defendant highlights for the Court, California courts have, in other burglar alarm cases, overwhelmingly upheld and enforced risk allocation provisions strikingly similar to the one at issue here. *See, e.g., Atkinson v. Pac. Fire Extinguisher Co.*, 40 Cal.2d 192, 195–98, 253 P.2d 18 (1953); *Better Food Markets, Inc.*, 40 Cal.2d at 184–88, 253 P.2d 10; *Guthrie v. Am. Protection Indus.*, 160 Cal.App.3d 951, 954, 206 Cal.Rptr. 834 (1984); *Fireman's Fund Ins. Co.*, 151 Cal.App.3d at 689–90, 198 Cal.Rptr. 756; *Feary*, 32 Cal. App.3d at 557–58, 108 Cal.Rptr. 242. Defendant also cites to the Second Circuit's decision in *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48–49 (2d Cir.1993), where the court cataloged decisions issued from courts across the United States up-

holding limitation-of-liability clauses in contracts for the provision of fire alarm and burglar alarm systems. In particular, the Second Circuit cited the California Court of Appeal decision in *Guthrie*, 160 Cal.App.3d at 954, 206 Cal.Rptr. 834, for the following proposition:

> Most persons, especially operators of business establishments, carry insurance for loss due to various types of crime. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime.

*Leon's Bakery, Inc.*, 990 F.2d at 48–49.

Accordingly, the Court finds that the limitation-of-damages clause within Paragraph E of the parties' contract is enforceable against Plaintiffs.

### E. *Liability for Conversion*

 Plaintiffs contend that the burglary was committed with the aid and assistance of, or in conspiracy with, one or more of ADT's agents and/or employees and that ADT is liable for such conduct under the theory of *respondeat superior*.[6] In order to establish a *prima facie* case of conversion, Plaintiff must demonstrate its ownership of the property at the time of the conversion, Defendant's conversion by a wrongful act, and resultant damages. *See Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 451, 61 Cal.Rptr.2d 707 (1997). To establish a conspiracy, Plaintiff must show that each member of the con-

---

**6.** Under the doctrine of *respondeat superior* liability, an employer is vicariously liable for the torts of its employees committed within the scope of their employment. *See Inter*

*Mountain Mortg., Inc. v. Sulimen*, 78 Cal. App.4th 1434, 1440, 93 Cal.Rptr.2d 790 (2000).

spiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan and that one or more of them committed an overt act to further it. *Choate v. County of Orange*, 86 Cal.App.4th 312, 333, 103 Cal.Rptr.2d 339 (2000). "Because civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it." *Id.*

 Plaintiffs point out that, as a general rule, conspiracy can be established by circumstantial evidence. *See Alfred M. Lewis, Inc. v. W.T.C.H. Local*, 163 Cal. App.2d 771, 779–79, 330 P.2d 53 (1958). The problem here is that Plaintiffs have presented evidence showing only that people appearing to be ADT representatives visited Plaintiffs' premises and that the burglars must have been sophisticated and expert in their techniques in order to burglarize Plaintiffs' store. Plaintiffs have not presented any evidence, circumstantial or otherwise, that the alleged ADT representatives acted in concert or came to a mutual understanding with the burglars in support of the alleged conspiracy to steal.

Furthermore, as Defendant points out, both the Ninth Circuit and the California Supreme Court have emphatically declined to impute *respondeat superior* liability for an employee's intentional tort. *See Ins. Co. of N.A. v. Fed. Exp. Corp.*, 189 F.3d 914, 922 (9th Cir.1999) (finding no *respondeat superior* liability for an employee's theft because "it was a substantial deviation from employee's duties"); *see also Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 12 Cal.4th 291, 297–98, 48 Cal. Rptr.2d 510, 907 P.2d 358 (1995) ("the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work."). Accordingly, even if Plaintiffs could present evidence that ADT's employees conspired with the burglars to steal their jewelry, the Court cannot impose *respondeat superior* liability against ADT

because such acts are so clearly a deviation from the employees' duties.

Upon viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs cannot establish that Defendant conspired in committing, or is liable under *respondeat superior* for, conversion. The Court therefore grants Defendant's motion for summary judgment on the conversion cause of action.

## F. *Entitlement to Attorneys' Fees*

ADT contends that Plaintiffs are not entitled to recover attorneys' fees under the Upgrade Agreement because the attorneys' fees provision limits the recovery of such fees to collections actions. The provision that Defendant highlights provides as follows:

> Failure to pay amounts when due shall give ADT, in addition to any other remedies, the right to terminate this Agreement and to charge interest at the highest legal rate on the delinquent amounts. Customer agrees to pay all costs, expenses and fees of ADT's enforcement of this Agreement, including collection expenses, court costs and attorneys' fees.

(Lopeztello Decl. ¶ 3, Ex. A; Valenzuela Opp. Decl. ¶ 14, Ex. D.) Notwithstanding the contract language, Plaintiffs contend that California Civil Code section 1717 provides Plaintiffs with a mechanism to recover attorneys' fees in the event they are the prevailing party.

Section 1717(a) provides in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not,

shall be entitled to reasonable attorney's fees in addition to other costs. [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

Cal. Civ.Code § 1717(a). "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." *Santisas v. Goodin,* 17 Cal.4th 599, 610, 614–15, 71 Cal.Rptr.2d 830, 951 P.2d 399 (1998) (affirming that section 1717 applies to attorney fee provisions implicated in actions to enforce contract claims).

Here, the Agreement permits ADT to recover attorneys' fees in actions to enforce the Agreement generally: "Customer agrees to pay all costs, expenses and fees of **ADT's enforcement of this Agreement,** including collection expenses, court costs and attorneys' fees." (Emphasis added.) The language does not limit the award of attorneys' fees to collections cases, as Defendant argues. Thus, by operation of Section 1717(a), if Plaintiffs prevail on their claim for breach of contract, they will be entitled to recover their attorneys' fees and costs. The Court therefore denies Defendant's motion for summary judgment with regard to Plaintiffs' claim for attorneys' fees under the Upgrade Agreement.

## III.

### *CONCLUSION*

In light of the foregoing:

1. Plaintiffs' motion for partial summary judgment as to their first cause of action for gross negligence and as to defendants' eleventh affirmative defense is DENIED;

2. Plaintiffs' motion for partial summary adjudication as to their second cause of action for breach of contract is GRANTED in part as follows: it is summarily adjudicated that the Upgrade Agreement constitutes a contract, that Plaintiffs have fully performed their duties thereunder, and that Defendant breached the contract. In all other respects, including the issue of causation of damages for breach of contract, Plaintiffs' motion for partial summary judgment is DENIED.

3. Defendant's motion for summary judgment is GRANTED in part as follows:

 a. Summary judgment is GRANTED as to Plaintiffs' first cause of action for gross negligence;

 b. With regard to Plaintiffs' second cause of action for breach of contract, it is summarily adjudicated that the limitation-of-damages provisions set forth in Paragraph E of the Upgrade Agreement apply in this case; and

 c. Summary judgment is GRANTED as to Plaintiffs' third cause of action for conversion.

4. In all other respects, including the issue of attorneys' fees, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

**ORDER RE PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 29, 2010 ORDER RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [87]**

This matter is before the Court on Plaintiffs' motion for reconsideration of the

Court's April 29, 2010 Order as to Plaintiffs' motion for partial summary judgment and Defendant's motion for summary judgment, currently set for hearing on June 7, 2010. The Court deems this matter appropriate for decision without oral argument. Fed.R.Civ.P. 78(b); C.D. Cal. L.R. 7–15. For the reasons set forth below, Plaintiffs' motion for reconsideration is DENIED.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 25, 2010, Plaintiffs filed a motion for partial summary judgment and Defendant filed a motion for summary judgment. After considering the respective positions of the parties, as presented in their briefs and at oral argument during the March 19, 2010 hearing, the Court issued its decision in an order dated April 29, 2010 (the "April 29 Order").

On May 12, 2010, Plaintiffs filed a motion for reconsideration of the April 29 Order. Defendant filed an opposition on May 17, 2010. Plaintiffs filed a reply on May 20, 2010.

# II.

## DISCUSSION

### A. Plaintiffs' Motion for Reconsideration

Plaintiffs seek reconsideration pursuant to Local Rule 7–18(c) and contend that the Court failed to consider material facts demonstrating that Defendant's conduct constituted a breach of independent tort duties, rose to the level of fraud and intentional concealment, and as a matter of law, constituted gross negligence. Local Rule 7–18(c) provides that "[a] motion for reconsideration of the decision on any motion may be made only on the grounds of . . . (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." C.D. Cal. L.R. 7–

18(a). Local Rule 7–18 further provides that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

Plaintiffs argue that the Court failed to consider the following material facts (the "facts-in-question"): (1) that despite being aware that it had lost the primary telephone connection, and despite being aware that it was to provide parallel protection, Defendant intentionally did nothing to restore the primary telephone line connection or provide parallel protection it had contractually agreed to provide; (2) that Defendant never provided any of the foregoing information to Plaintiffs, thereby knowingly concealing that information from Plaintiffs; (3) testimony by Defendant's witness, James Mooney, that if Defendant had provided the parallel protection it had contractually agreed to provide, even if the cellular back-up connection had been lost, a signal still would have been transmitted to Defendant via the telephone line connection; and (4) that because Defendant never informed Plaintiffs (a) the cellular monitoring account was out-of-service, (b) the telephone primary connection had been lost, or (c) of any of the alarm monitoring problems, Defendant thereby knowingly and intentionally deprived Plaintiffs of the ability to take corrective actions or otherwise protect their merchandise and cash, such as moving them to another secure location.

Plaintiffs fail to make a "manifest showing" that the Court did not consider the facts-in-question. First, the Court both considered and addressed Plaintiff's first and second facts-in-question in section II.B of the April 29 Order. *See* April 29 Order at pp. 1068–72. In the April 29 Order, the Court noted that Plaintiffs failed to present any evidence either that Mr. Wright knew or should have known that the alarm system was installed properly, or that

ADT knew that Plaintiffs' alarm system was improperly coded "out of service." *Id.* at pp. 1069–70, 1070. In their motion for reconsideration, Plaintiffs neither present evidence of Mr. Wright's or ADT's knowledge,[1] nor any new material facts as required by Local Rule 7–18, but rather, merely repeat arguments previously made in support of Plaintiffs' motion for partial summary judgment and in opposition to Defendant's motion for summary judgment.

Second, Plaintiffs argue that in light of the third fact-in-question, "[i]t also is undisputed that had there been the parallel protection that was supposed to be provided by ADT pursuant to the upgrade agreement, even if the cellular monitoring account was reporting as out-of-service, the alarm transmitted by the telephone monitoring account would have been acted upon by ADT's monitoring operators." (Mot. at 5.) In support of their argument, Plaintiffs rely solely on Mr. Mooney's deposition testimony, as follows:

> If it were installed as a backup device to a primary phone line transmitter, it would be set up as a secondary device, and both transmitters, the H765 as well as the U68 account, would both be transmitting it to the event history.

(Steiner Opp. Decl. ¶ 31, Ex. E; Mooney Depo. p. 150.)

Plaintiffs overstate the conclusions that can be drawn from Mr. Mooney's testimony. Nowhere in Mr. Mooney's testimony does he state that the ADT monitoring operators would have acted upon an alarm transmitted by the telephone monitoring account, even if Plaintiffs' account was coded "out of service." As the Court discussed in the April 29 Order, Plaintiffs conceded that "ADT did receive a burglar alarm signal on September 20, 2008, which indicates the alarm system was connected and functioning at that time, albeit with the cellular connection as the primary rather than the backup." April 29 Order at p. 1069. What caused ADT's failure to notify Plaintiffs of the burglar alarm system on September 20, 2008, therefore, was not the lack of a functioning telephone monitoring system, but rather, the improper coding of Plaintiffs' account as "out of service." Mr. Mooney's testimony does not indicate that an additional signal sent by a telephone monitoring account would have caused ADT to act on an alarm received from an "out of service" account. Consequently, Plaintiffs' third fact-in-question is not a material fact that the Court failed to consider.

Finally, the Court finds that Plaintiffs' fourth fact-in-question is relevant to a determination of whether Defendant's breach of the Upgrade Agreement caused Plaintiffs' damages. As the Court explained in the April 29 Order, however, genuine issues of material fact exist as to whether Defendant's breach of contract caused Plaintiffs' damages. *See* April 29 Order at pp. 1072–73. Therefore, the fourth fact-in-question is also not a material fact that the Court failed to consider.

## B. Plaintiffs' Request for Judgment on Plaintiffs' Breach of Contract Claim

In the alternative, Plaintiffs ask the Court to find in favor of Plaintiffs on the breach of contract claim and enter judg-

---

1. As the Court noted in the April 29 Order, the Event History Report shows that the first "OOS" message, indicating that Plaintiffs' account was "out of service," occurred on July 19, 2008, more than a week *after* Mr. Wright installed the cellular phone backup. April 29 Order at p. 1065 n. 2. Furthermore, contrary to Plaintiffs' counsel's summary of Mr. Wright's deposition testimony, nowhere in his deposition did Mr. Wright indicate that he was aware that all signals from the primary monitoring account were lost at the time of the installation of the cellular phone backup.

ment for Plaintiffs in the amount of $1,000, as provided for in the limitation-of-damages clause of the Upgrade Agreement, or at least in the amount of $322.97, which Plaintiffs paid as installation and monitoring service fees under the Agreement. Defendant argues that Plaintiffs' request should be denied because it is, in essence, a motion by Plaintiffs for summary judgment on their contract rescission claim. The Court disagrees.

In the April 29 Order, the Court determined that the limitation-of-damages clause within Paragraph E of the Upgrade Agreement is enforceable against Plaintiffs. *See* April 29 Order at pp. 1073–76. Paragraph E provides, in relevant part, that:

> IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A *FAILURE OF SERVICE* OR EQUIPMENT *IN ANY RESPECT*, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY.

(Valenzuela Opp. Decl. ¶ 14, Ex. D) (emphasis added).

While the parties dispute whether, and to what extent, the failure of Plaintiffs' alarm system was a substantial factor in Plaintiffs' ability to thwart the burglars, or at least, to minimize the damage caused by the burglars, the parties do not dispute that ADT breached the Upgrade Agree-ment. *See* April 29 Order at p. 1073. Whether Defendant failed to provide the agreed upon alarm monitoring service because it improperly installed the cellular monitoring as the primary and sole monitoring line, rather than as the backup or parallel protection, or whether Defendant failed to provide the agreed upon alarm monitoring service because Plaintiffs' account was improperly coded "out-of-service," Defendant failed to provide the alarm monitoring service agreed to by the parties under the Upgrade Agreement.

Although the recovery of $1,000 in damages was not the focal point of Plaintiffs' motion for partial summary judgment and, for that reason, was not addressed in the April 29 Order, $1,000 is in fact the agreed upon damage figure under Paragraph E of the Upgrade Agreement and flows from the Court's finding of a breach of contract. The Court also notes that at oral argument during the March 19, 2010 hearing, Defendant's counsel conceded that if the Court were to find that Defendant breached the Upgrade Agreement, Defendant would be willing to pay Plaintiffs the $1000 amount owed under the Agreement. In light of Defendant's "failure of service," the Court finds that Defendant is liable to Plaintiffs for the amount of $1000.[2]

## C. Defendant's Motion for Attorneys' Fees

Defendant asks the Court to award attorneys' fees pursuant to 28 U.S.C. § 1927 for defending against Plaintiffs' motion for reconsideration.[3] The Ninth Circuit has

---

**2.** In Defendant's motion for summary judgment, Defendant notes that the annual service charge on Plaintiffs' account is $539.88. (Def.'s Mot. Summ. J. at 17.) The Court notes a discrepancy between $539.88, which Defendant indicates is the annual service charge on Plaintiffs' account, and $322.97, which Plaintiffs indicate is the amount of the installation and service charges that ADT billed to Plaintiffs. (Pl.'s Mot. Recons. at 11.)

Nevertheless, $1000 is greater than either $539.88 or $322.97 and paragraph E of the Upgrade Agreement provides for payment of "a sum equal to 10% of the annual service charge or $1,000, whichever is greater."

**3.** Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so mul-

held that section 1927 sanctions must be supported by a finding of subjective bad faith. *See In re Keegan Management Co.,* 78 F.3d 431, 436 (9th Cir.1996). " 'Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.' " *Id.* (citing *Estate of Blas v. Winkler,* 792 F.2d 858, 860 (9th Cir.1986)).

The Court agrees that Plaintiffs and their counsel have unnecessarily and unreasonably multiplied this litigation by repeating arguments made in the underlying cross-motions for summary judgment in blatant violation of Local Rule 7–18. The Court, however, does not find that Plaintiffs have acted with subjective bad faith or with intent to harass. Accordingly, the Court denies Defendant's request for attorneys' fees.

## III.

### *CONCLUSION*

In light of the foregoing:

1. Plaintiffs' motion for reconsideration of the Court's April 29, 2010 Order is DENIED as to: (a) the denial of Plaintiffs' motion for partial summary judgment on their first claim for relief for gross negligence and their second claim for relief for breach of contract, and dismissing Defendant's tenth and eleventh affirmative defenses; and (b) the granting of Defendant's motion for summary judgment dismissing Plaintiffs' first claim for relief for gross negligence;

2. Plaintiffs' request for the entry of judgment in the amount of $1,000 on Plaintiffs' second cause of action for

breach of contract is GRANTED; and

3. The June 7, 2010 hearing is VACATED.

IT IS SO ORDERED.

tiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927.